UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

| | |
|---|---|
| DANIEL SKIDMORE | ) Case: 2:25-cv-10084 |
| | ) Assigned To : Michelson, Laurie J. |
| *Plaintiff,* | ) Referral Judge: Patti, Anthony P. |
| | ) Assign. Date : 1/10/2025 |
| | ) Description: CMP Daniel Skidmore v. |
| | ) United States Department of |
| -vs- | ) Education, et al. (JH) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) **Demand for Jury Trial** |
| EDUCATION, | ) |
| | ) **Request for Preliminary** |
| | ) **Injunction** |
| MIGUEL A. CARDONA, in his official | ) |
| Capacity as Secretary, United States | ) **Request for Declaratory** |
| Department of Education, and | ) **Judgement** |
| | ) |
| *Defendants.* | ) |

---

DANIEL SKIDMORE
1053 Academy Dr.
Rochester Hills, MI 48307
248-979-8253
daniel.g.skidmore@gmail.com

---

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

**NOW COMES** above-named Plaintiff, DANIEL SKIDMORE and in

support of his Complaint against Defendants, United Stated Department of

Education and Miguel A. Cardona in his capacity as Secretary of Education, states

as follows:

## INTRODUCTION

1.      This case has been filed to address rampant, arbitrary actions by the Department of Education in handling the student loans of Mr. Daniel Skidmore in violation of the law and the Department's contractual obligations.

2.      There have been extensive new stories in the past years that have highlighted the Department's abuses in mishandling student loan forgiveness.

3.      This is yet another such case.

4.      Pursuant to 20 USC 1098e, Congress mandated that the Department of Education "shall" forgive student loans where a person has made a payment under one or more of the many income-based repayment plans available and has taken some form of qualifying action on the loan for a period of time not to exceed 25 years. 20 USC 1098e(b)(7)(B).

5.      As discussed below, Mr. Skidmore has made income-based payments, and he has been in a state of qualifying repayments since 1998—more than 26 years ago.

6.      Thus, Mr. Skidmore is entitled pursuant to 20 USC 1098e to a loan forgiveness and refund of payments taken by the Department without legal authority.

7.      Further, the Department has also issued regulations that would grant Mr. Skidmore loan forgiveness instead in as little as 20 years.

8.      Unless those regulations are stricken down by some other legal process, Mr.

Skidmore is entitled to the same loan forgiveness that millions of people have

already received under that earlier standard and thus requests this treatment once

the outcome of litigation regarding those regulations is clear.

9.      However, the Department has refused to grant Mr. Skidmore forgiveness,

address Mr. Skidmore's claims, or even provide basic information in any form in

support of its entirely arbitrary and unfounded positions.

10.     Notably, before initiating this litigation, Mr. Skidmore has literally pled with

call center staff and management of the Department of Education and his loan

servicer, to provide clarification or assistance to avoid this suit, but his cries for

help have been utterly ignored.

11.     In fact, Mr. Skidmore has spent approximately 25-30 hours on hold and on

calls with call centers in December of 2024, written messages, emails, letters,

complaints, and other requests for help to no avail.

12.     Wait times to get to an advanced agent who can help are 2-6 hours, and Mr.

Skidmore has been repeatedly cut off while on hold waiting for such an agent.

13.     Mr. Skidmore has also filed FOIA and Privacy Act requests for information,

but those have also gone unanswered until this point.

14.     On 12/18/2024, Mr. Skidmore called into MOHELA in his last ditch attempt

for assistance, and was disconnected by the MOHELA representatives twice while

3

"transferring" him to someone else to help (Mr. Skidmore was on hold for approximately two hours).

15.    As a result, Mr. Skidmore has no alternative but to file this suit.

16.    Mr. Skidmore spent his holiday break and since researching and preparing this complaint and other filings.

17.    Notably, this is a *pro se* pleading prepared without the assistance of counsel and thus is required by law to be construed liberally and to have its factual assertions deemed true in any motion to dismiss.

### PARTIES

18.    Plaintiff, DANIEL SKIDMORE ("Mr. Skidmore") is an individual who resides in the City of Rochester Hills, County of Oakland, State of Michigan.

19.    Defendants are officials of the United States Government and United States governmental agencies and a private corporation that is an agent of the United States Government (collectively "Defendants").

20.    Defendant United States Department of Education (the "Department") is an agency of the United States government, located at 400 Maryland Avenue, S.W., Washington, D.C. 20202.

21.    Defendant Miguel A. Cardona is the United States Secretary of Education (the "Secretary") and is responsible for the operation of the Department. 20 U.S.C. § 3411. He is sued in his official capacity.

## JURISDICTION & VENUE

22.   This Court has jurisdiction as to the Governmental Defendants pursuant to 5 U.S.C. §§ 701–706 and 28 U.S.C. §§ 1331, 1361, and 2201.

23.   This Court also has jurisdiction and authority to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702, 705, and 706, 28 U.S.C. §§ 1361 and 2201–2202, FRCP 57, and its inherent equitable powers.

24.   Jurisdiction and venue are also proper within this Court as the amount in controversy is greater than $75,000, exclusive of interest, costs, and attorney fees.

25.   Subject matter jurisdiction is also had because the statutes to be interpreted below are Federal statutes.

26.   Venue is proper in this district under 28 U.S.C. § 1391(e)(1).

27.   Defendants are United States agencies or officers sued in their official capacities.

28.   "[A] substantial part of the events or omissions giving rise to the claim occurred" in Rochester Hills, MI, and "the plaintiff resides" in Rochester Hills, MI, and "no real property is involved in the action." Id.

29.   The situs of the actions that formulate the basis for this Counterclaim and litigation is Rochester Hills, MI, County of Oakland, State of Michigan, which is located in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

30.    Mr. Skidmore worked his way through his undergraduate degree, but had no alternative other than to take out loans in the last two years of his undergraduate studies in the late 1990s.

31.    Mr. Skidmore borrowed under Direct Federal student loan programs offered and administered by the Department.

32.    Mr. Skidmore was on in-school deferment in Jun-December of 1998.

33.    Mr. Skidmore entered payment on his Federal Direct loans on December 18, 1998, more than 26 years ago.

34.    Mr. Skidmore paid his loans in full and on time for several years.

35.    Mr. Skidmore returned to graduate school and, on information and belief, was placed in in-school deferment status from the Fall of 2003 until the Spring of 2006.

36.    On information and belief, the Department's imposition of in-school deferment status was not voluntary, but rather automatic.

37.    On information and belief, Mr. Skidmore reentered repayment and consolidated his loans sometime in 2005-2007.

38.    Mr. Skidmore has continued to pay his loans in full and on time.

39.    Mr. Skidmore has continued to pay his loans in this manner despite serious financial and personal hardships involving life-threatening medical conditions with his first child which resulted in the loss of his home and other financial

repercussions, Mr. Skidmore's own subsequent medical conditions, the failure of a business, and more than two years of involuntary unemployment.

40.     These factors have repeatedly pushed Mr. Skidmore to the brink of bankruptcy.

41.     However, Mr. Skidmore has prioritized paying his student loans for a period of more than 26 years now, despite the challenges.

42.     Presently, Mr. Skidmore is still financially struggling due to the aforementioned health issues and other issues.

43.     Mr. Skidmore has been attempting workouts of his existing loan obligations, and began speaking with the Dept. of Education regarding student loan forgiveness several months ago.

44.     When Mr. Skidmore has contacted the Dept. of Education and MOHELA (Missouri Higher Education Loan Authority), the Department's loan servicer, representatives have agreed with Mr. Skidmore's reasoning and  have been unable to provide any reasoning explaining why Mr. Skidmore is not entitled to a student loan forgiveness under the regulations.

45.     Mr. Skidmore has requested his promissory notes, information on his account, a full account statement (including calculation of amount due/balance), history of payments made, his periods of deferment, the Dept. of Education rules, procedures, and policies interpreting the forgiveness.

46.     Mr. Skidmore has made these requests to MOHELA and to the Department via requests to representatives, online form requests, Privacy Act and FOIA requests, and formal complaints.

47.     However, after repeated requests for weeks or months in some cases, neither the Dept. of Education nor MOHELA has provided the requested information.

48.     All that Mr. Skidmore has received is a partial history of payments from 2015 and forward, which is utterly insufficient for Mr. Skidmore to determine his legal rights and status.

49.     Mr. Skidmore is unable to make informed decisions about qualification for student loan forgiveness without the requested information.

50.     Mr. Skidmore is also unable to understand his current status with regards to loan forgiveness without this information.

51.     Mr. Skidmore also cannot undertake further legal or other action without an understanding of this information.

52.     Mr. Skidmore is legally entitled to receive this information from the Department.

53.     On information and belief, the Department does not possess documentation sufficient to justify its claimed balance, claimed payments, or failure to provide a loan forgiveness.

54.    The Trump Administration will take control of the government on January 15, 2025.

55.    The Trump Administration has vowed to on "day one" take steps to organizationally eliminate the Department of Education, undo loan forgiveness regulations, and make other sweeping changes that will likely have both temporary and potentially permanent effects on Mr. Skidmore's ability to obtain the loan forgiveness that he is qualified for today.

56.    These changes will likely have immediate impact on Mr. Skidmore's ability to ever receive clarification and/or to take action to receive the forgiveness he is entitled to or could be entitled to if his situation and the requirements were clear to him.

57.    Further, even if this Court were to hold that Mr. Skidmore still must do something to qualify for loan forgiveness for some reason, because the Department and MOHELA are not providing Mr. Skidmore with the information he requires, Mr. Skidmore is powerless to know what he needs to do to remedy any potential shortcoming to obtain a loan forgiveness.

58.    A person can only change a payment plan one time per year, which means a misstep on Mr. Skidmore's part by applying for the wrong program at the wrong time could mean the difference between a loan forgiveness and refund or on the other hand financial devastation.

59.     In light of Mr. Skidmore's financial situation, the Department's improper

inaction, the coming changes to the Department and regulatory landscape, and

other factors, immediate action is necessary on Mr. Skidmore's part.

60.     Due to his financial situation, Mr. Skidmore will be irreparably harmed in

the absence of an injunction to remedy the current situation.

61.     Mr. Skidmore is potentially facing bankruptcy and has begun work with a

bankruptcy attorney to evaluate options.

62.     On information and belief, Mr. Skidmore is qualified for a Chapter 7

Bankruptcy.

63.     Mr. Skidmore made multiple requests verbally and in writing in early and

mid-December to the Department and MOHELA to engage with him in resolving

these issues, but his requests for assistance and engagement have not been met

with any action by these entities.

64.     Mr. Skidmore has exhausted his avenues to resolve this without legal action.

65.     Finding no alternative course of action, Mr. Skidmore filed this suit to

protect his rights and seek resolution of these matters.

## COUNT 1 – Declaratory Judgement
### (Department, Secretary)

66.     Skidmore incorporates and realleges all prior and following paragraphs.

67. This Court has jurisdiction and authority to award a declaratory judgement under 5 U.S.C. §§ 702, 705, and 706, 28 U.S.C. §§ 1361 and 2201–2202, FRCP 57, and its inherent equitable powers.

68. A declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. F.R.C.P. 57.

69. "The court may order a speedy hearing of a declaratory-judgment action." F.R.C.P. 57. Declaratory judgments can be issued only when there is "an actual controversy," 28 U.S.C. § 2201.

70. To have a right to a declaratory judgment, there must be a "controversy" that is "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).

71. Here, the relevant facts stated above and below are not hypothetical and not believed to be in dispute.

72. The issues upon which a declaratory judgement are sought are "justiciable" because they are purely legal issues.

73. Here, there are also multiple such actual controversies, each of which is addressed in each subsection below.

74.     Currently, the Department is demanding through its servicer that Mr. Skidmore make further payments while Mr. Skidmore is financially in peril.

75.     Further, the lack of information enabling Mr. Skidmore to make informed decisions at a time where his finances are in peril and the programmatic and regulatory foundation is likely to shift dramatically and with immediacy creates an untenable situation for Mr. Skidmore.

76.     Mr. Skidmore has an obvious practical interest in the declaration sought because he faces irreparable harm if he is improperly denied treatment to which he is entitled under the law, and the loan balance remains in question.

77.     There is a substantial and immediate question of law regarding whether the Defendants have interpreted the statutes and their rights correctly.

78.     Declaratory judgments are particularly suited for and indeed intended to rule on the legal/constitutional adequacy of administrative rules/statutes. See *Steffel v. Thompson*, 415 U.S. 452 (1974) (Declaratory Judgment Act was to allow challengers to test constitutionality); *Consumer Mail Order Ass'n of Am. v. McGrath*, 94 F. Supp. 705,709 (D,D.C 1950) ("[W]e think it is within our discretion under the Declaratory Judgment Act to decide the constitutional question.")

79.     And, a declaratory judgment on the issues requested above would both clarify the rights or legal relations of the parties and resolve any dispute between the parties on these issues.

## Amount Owed

80.     Mr. Skidmore's position is that the Department has claimed a higher amount of interest and higher balance than is evidenced or justified by any promissory note, interest/payment/consolidation calculation, payment plan, regulation or statute.

81.     Mr. Skidmore's position is that he is only required to pay amounts that the Department can justify based on the evidence, interest rates, and calculations that reflect the promissory notes.

82.     If an amount is not justified by the facts and law, the Department has no claim against Mr. Skidmore for money.

83.     Given that Mr. Skidmore has been in one form of repayment or another for nearly 27 years now, even a small miscalculation of interest, payment, or balances can very easily lead to a significant change in the claim amount.

84.     Indeed, Mr. Skidmore may have already paid his loans off because the Department has overstated the balances and interest to which it is due.

85.     Further, as discussed in detail below, even by the Department's claim, Mr. Skidmore is at least approaching the point of loan forgiveness, such that a

restatement on the actual state of the account could dramatically impact decisions about how to handle the account.

86.    The Department's position is that Mr. Skidmore still owes approximately $77,000 and that he is not entitled to a student loan forgiveness until an additional two years of payments are made.

87.    Despite this position, the Department has been entirely unable and/or unwilling to share any promissory notes, interest rates, calculations, or other evidence or information required to justify and authenticate its claims against Mr. Skidmore.

88.    Also, the little information that the Department has shared with Mr. Skidmore in December of 2024 shows that Mr. Skidmore's loan balance is growing while in repayment.

89.    This, on its face, reflects a miscalculation of any repayment plan.

90.    This is obviously not repayment but rather a growing debt.

91.    Mr. Skidmore did not ever knowingly assent to a payment plan that results in a growing debt.

92.    Mr. Skidmore is on a payment plan and calculation that should be paying down his loan or at least maintaining it, but not allowing the balance to grow.

93.    That was never Mr. Skidmore's intent in selecting repayment plans.

94.    Moreover, Mr. Skidmore cannot find any provision of the law that allows, and does not believe that the Parties' promissory note would have a provision that would allow, the Department to use a repayment plan that actually increases the balance owed.

95.    Such a plan amounts to consumer financing that is not educationally oriented.

96.    Indeed, the Department does not have authority—Congressional or otherwise—to actually grow the amount of debt of a borrower in repayment if that borrower has not defaulted and is not subject to any penalty or fault.

97.    Borrowers expect that by making payments for decades they are reducing, not growing their debts.

98.    Mr. Skidmore was never informed that the Department would be increasing his balance through a "repayment" plan.

99.    In reviewing the payments, interest rate, and balances, Mr. Skidmore also cannot make the math work to justify the claims of interest and the balance the Department against him.

100.   More specifically, the Department appears to be making a claim (1) in excess of what was due to them originally under promissory notes, (2) charging interest at a rate too high, (3) improperly setting payment amounts, (4) incorrectly capitalizing interest, (5) improperly using fees, (6) improperly calculating other

matters, and/or (5) otherwise charging more than what they can justify on the facts and law.

101.  Mr. Skidmore has a MBA and more than 10 years of experience at a financial services company, and is unable to make sense of the payment scheme being used here.

102.  As a result, Mr. Skidmore's position is that the Department has no basis for its claims against him, (2) that any amount owed is less than the amount claimed, and/or (3) that Mr. Skidmore has overpaid and is entitled to a reimbursement.

103.  As a matter of law, no person—including or more appropriately most of all a U.S. Government agency—can claim or enforce an obligation that is unevidenced and unjustified.

104.  If there is no evidence of the claims made against Mr. Skidmore, then he should not be obligated to pay a speculative amount that he disputes.

105.  Mr. Skidmore seeks a declaratory judgement that the maximum amount that can be claimed by the Department is the amount that can be justified by the evidence of promissory notes, consolidation, interest/payment calculations, etc. in a complete account statement.

**Material Breach - Duty of Good Faith & Fair Dealing and Other Duties**

106.  Another controversy focuses on the rights and duties of the parties to reasonable information.

107.   Mr. Skidmore's position is that, under the law and/or any promissory note that was entered into, he is entitled to receive, after a reasonable request and reasonable time, information on his account, including but not limited to the information requested (as stated above: promissory notes, history of payments, account statement, calculation of balance and payments, history of payment plans, periods of deferment/grace, etc.).

108.   Mr. Skidmore is also entitled to receive information on the Department's interpretation of the law and regulations in terms of policies, procedures, rules, and/or calculations used by the Department for determining qualification for loan forgiveness so that Mr. Skidmore can make informed decisions about which payment plan to enroll in.

109.   Mr. Skidmore also alleges that the Department has a duty to provide borrowers with information on their payment plan forgiveness timelines and status, its interpretation of the requirements for loan forgiveness, the Department's interpretation of payments and whether action or inaction amounts to a qualifying action for loan forgiveness in its view.

110.   Without this information, borrowers are unable to make informed decisions about their payment plans.

111.   Mr. Skidmore's position is also that he is entitled to receive a response to a complaint within a reasonable time.

112.  Mr. Skidmore also maintains that a reasonable time to receive an account statement, payment history, calculation of interest, calculation of payment, and most of other information requested on the account is one week at most.

113.  Mr. Skidmore also alleges that a reasonable time to receive a statement on the Department's interpretation of the regulations/rules/policies/procedures for loan forgiveness following a request is one week at most.

114.  Mr. Skidmore also maintains that a reasonable time to provide a promissory note following a request is no more than two weeks at most.

115.  The reasonable time to respond to a complaint by a borrower is three weeks at most.

116.  Nevertheless, in all cases, these requests by Mr. Skidmore have now gone several weeks or months beyond what a reasonable person would expect.

117.  Moreover, the Department maintains that it will take an additional undefined period of months to respond to these requests.

118.  The Department's position is that it is not required by any contractual or other legal duty to provide this information or response to Mr. Skidmore for periods of weeks or months and/or is not required to provide the information requested at all.

119.  The Department has also taken the position in telephone communications with Mr. Skidmore that Mr. Skidmore is only entitled to the information above via

a Privacy Act or FOIA Act request rather than as a good faith/fair dealing/contractual duty in a financial transaction.

120. In an attempt to resolve this issue, Mr. Skidmore make a FOIA and Privacy Act request, but disputes that he is required to do this when the Parties are Parties to a commercial transaction in which the lender has duties under any promissory note, statutorily, and otherwise under the law.

121. The Department's position is that it is not required to provide this information.

122. It is also Mr. Skidmore's position that the Department has a duty to provide services to students that are reasonable as measured by industry standards in terms of a servicer that responds to borrower calls within a reasonable time, does not drop calls without reason, meets industry practices with regards to training and customer service, avoids unnecessary complaints, obeys applicable federal and state laws, and otherwise acts reasonably according to industry standards.

123. The Department has elected to use servicers who provide services to students that are not reasonable as measured by industry standards in terms of a servicer that responds to borrower calls within a reasonable time, does not drop calls without reason, meets industry practices with regards to training and customer service, avoids unnecessary complaints, obeys applicable federal and state laws, and otherwise acts reasonably according to industry standards.

124.   Specifically, the Department has chosen to use MOHELA (Missouri Higher Education Loan Authority) as Mr. Skidmore's loan servicer.

125.   MOHELA has among the worst service levels in the industry on the factors listed above.

126.   MOHELA has been sued by multiple entities recently over alleged violations of the law in its terms and conditions and practices with student loan servicing.

127.   MOHELA also has the longest wait times in the industry.

128.   MOHELA also has the highest level of consumer complaints filed among the major student loan servicing companies.

129.   In other ways, MOHELA also fails to meet basic industry standards.

130.   On information and belief, the Department is well aware that MOHELA does not meet industry standards on the issues above.

131.   The Department has elected to provide these unreasonable, incorrect, and legally deficient services to borrowers negligently, recklessly, knowingly, and/or intentionally because MOHELA charges below market rates for is sub-standard services.

132.   The Department believes that because it is a government entity, it is not required to provide services meeting industry standards.

133.   It does not meet the Department's duty of good faith and fair dealing to use a servicer like MOHELA who does not respond to calls for hours, drops them, provides incorrect or incomplete information to borrowers, and violates the law in the process of doing so.

134.   The Department's position is that it is allowed to use a servicer with unreasonably high dropped call rates and all wait times as well as other practices that are entirely outside of the reasonable and industry standards, a servicer that has one of worst—if not the worst—track records in the industry for complaints and customer service levels, and one that brazenly violates laws that are meant to protect consumers.

135.   The Department believes that it has no obligation to act reasonably in interacting with borrowers attempting to repay their loans.

136.   In this case, it is not believed to be in dispute that MOHELA does not meet industry standards on the above issues.

137.   The controversy therefore is only whether, as a matter of law, it is a violation of statutory, regulatory/administrative, due care, good will and fair dealing, and/or other duties to use such a servicer.

138.   Mr. Skidmore maintains that it does.

139.   Specifically, were it not for the Department's decision to use MOHELA for loan servicing, (1) Mr. Skidmore would have received information that would have

enabled him to obtain earlier loan forgiveness, (2) Mr. Skidmore would have enrolled in different plans and payment status at different periods of time which would have enabled Mr. Skidmore to pay off his loan or have had his loan forgiven already, (3) Mr. Skidmore could have re-signed up for the PAYE/REPAYE program in time to be enrolled in the SAVE program and had his loans forgiven already and as of 2018, (4) Mr. Skidmore would have already received information that would have enabled him to take other action to have his loans forgiven.

140.   Additionally, the levels of service are so bad as to constitute a material breach of contract as a matter of law.

141.   The Department does not have any information or evidence that would counter the evidence and testimony on these issues that will be presented to the Court.

142.   Thus, this is a pure legal question.

### Loan Forgiveness under 20 USC 1098e

143.   Mr. Skidmore also seeks a declaratory judgment that he is entitled to loan forgiveness as of June 2023 (or December 2023 at the latest) pursuant to 20 USC 1098e based on a proper interpretation of the three legal controversies between the Parties. 20 USC 1098e(b)(7) ("Secretary shall repay or cancel … loans … to a borrower who….").

144. Mr. Skidmore's loans are all direct loans, and thus meet the requirements of 20 USC 1098e(a).

145. Mr. Skidmore does not believe this to be in dispute.

146. Mr. Skidmore also meets the requirements of 20 USC 1098e(b)(7)(a) because he has elected in the past to participate in income-based repayment. Id. ("Secretary shall repay or cancel … loans … to a borrower who – (A) <u>at any time</u> elected to participate in income-based repayment") (emphasis added).

147. Department interpretive publications agree with Mr. Skidmore. See e.g., Payment Count Adjustments Toward Income-Driven Repayment and Public Service Loan Forgiveness Programs," by Dept. of Education, at https://studentaid.gov/announcements-events/idr-account-adjustment on 12/19/2024 ("Who This Is For. This information applies to you if you are … on an income-driven repayment (IDR) plan <u>or were on one in the past</u>") (underline added).

148. Mr. Skidmore participated in the PAYE or REPAYE (subsequently referred to as PAYE only) payment plan, the precursor to the SAVE payment plan, which is an "income-based repayment" plan.

149. Thus, Mr. Skidmore meets the requirements of 20 USC 1098e(b)(7)(a).

150.   Further, because Mr. Skidmore is allowed to make that election "at any time," he also may elect to have previous months be calculated on this basis subsequently. Id. ("at any time").

151.   Mr. Skidmore has made this election for the time periods of June-November of 1998, January-December of 1999, August 2003-May 2006, and July 2014-February of 2018.

152.   Mr. Skidmore reiterates this election with this filing.

153.   Congress expressly authorized the Department to set the maximum time duration of repayment in 20 USC 1098e(b)(7)(B), but limited the Department's authority to a period of no more than 25 years. Id. ("for a period of time prescribed by the Secretary not to exceed 25 years").

154.   The Department set the "prescribed" period of time at which loan forgiveness occurs under 20 USC 1098e at 25 years.

155.   Mr. Skidmore entered repayment in 1998 either by electing to have his in-deferment period from June-November of 1998 as qualifying for $0 payments and/or for his actual payment made on December 18, 1998.

156.   The Department's position is that Mr. Skidmore does not qualify for a loan forgiveness because it alleges that Mr. Skidmore is for some unclear reason required to make 300 payments under their counting methodology rather than be granted forgiveness after "25 years."

157.   The Department further maintains that Mr. Skidmore has only made 276
payments qualifying for accumulation for the purposes of 20 USC 1098e(b)(7)(B).

158.   The Department's position that Mr. Skidmore can be required to continue
repaying his loans more than 25 years after he entered repayment is a direct
violation of 20 USC 1098e's Congressional limitation that the time spent in
repayment is "not to exceed 25 years."

159.   When courts interpret statutes, they must first look to the specific statutory
language to determine the intent of the Legislature, and if the language is clear and
unambiguous, the plain meaning of the statute reflects the legislative intent and
judicial construction is not permitted. *Univ'l Underwriters Ins Group v Auto Club
Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003).

160.   "A statutory provision is ambiguous only if it conflicts irreconcilably with
another provision or it is equally susceptible to more than one meaning. . . ." *Sau-
Tuk Indus, Inc v Allegan County*, 316 Mich App 122, 136; 892 NW2d 33 (2016).

161.   In this case, there is nothing ambiguous about the "not to exceed 25 years"
statutory verbiage, and it is not susceptible to more than one meaning or a meaning
that would allow for it to be interpreted in a manner directly contrary to its express
and plain meaning.

162. If the Legislature had intended the loan forgiveness to be based on 300 payments rather than the passage of a 25-year period of time, it easily could have drafted the statute in that way.

163. Indeed, the Department knows this because in their own draft regulations, they are careful to specify payments as the basis for loan forgiveness rather than just time or in addition to time.

164. Congress instead mandated that the time to receive loan forgiveness is "not to exceed 25 **years**," which is unambiguously measured in the passage of **time**, not completion of 300 **payments**.

165. Even if this Court were to hold that there were ambiguity in the statute for any reason, the court must apply the plain meaning to the words, and there is no basis for interpreting the statute as the Secretary/Department has done.

166. Instead, the plain meaning of "a period of time" is "an amount of time" (Vocabulary.com definition of "period of time" at https://www.vocabulary.com/dictionary/period%20of%20time on 12/28/2024), and the meaning of "period" as "a length of time" (Chambridge Dictionary Online definition of "period" at https://dictionary.cambridge.org/us/dictionary/english/period on 12/28/2024).

167. Thus, "a period" is a single measurment of time measured from start to end, not an artificial amalgamation of "300" individual periods of time and separated

months that has the effect of extending the period of time that a person must repay beyond the clearly limit defined by Congress.

168. Similarly, Congress' intended and express specification of "a" single "period" of time measured from start to end makes sense because the stated intention of the forgiveness is to avoid a person being burdened with student loans beyond a reasonable period of their working/earning years.

169. This being the case, the very clear intent of Congress was to establish a maximum period of time measured from the first qualified action.

170. While it may serve the financial interests of the Department to try to force people to continue payment beyond the 25-year maximum, it hurts people who are burdened their entire lives by debt and injures their ability to be active participants in the economy.

171. For example, despite paying back nearly $400,000 in student loan payments over the past 25 years, Mr. Skidmore still doesn't own a home and could not financially support his first daughter in college because he is still paying for his, and has zero savings for his second daughter when she goes to college.

172. This cycle of financial indebtedness that can trap—and here has trapped—a person for his entire life.

173.   This is exactly what Congress intended to avoid by limiting the period of time during which a person must make repayments to 25 years after the start of repayment.

174.   The Department and Secretary cite no authority for such a direct contravention of the unambiguous statutory limit on its authority.

175.   Indeed, there is none.

176.   Even if payment history is to be considered for some reason, completion of the requisite time would, under the statute, be based on counting the "years" in which a qualifying status is achieved—not months—based on its express terms.

177.   And, further, even if this Court held for any reason that a person must reach 300 months of a specific status, the Department is still wrong in counting only 276 months of compliance by Mr. Skidmore.

178.   The Department and Secretary have communicated to Mr. Skidmore that periods during which they put a person on in-school deferment cannot count towards payments.

179.   However, the relevant statute (20 USC 1098e) does not contain any provision to this effect.

180.   Rather, 20 USC 1098e is very clear that when a person is experiencing a partial financial hardship" as defined by 20 USC 1098e(a)(2), only a "reduced payment" is required based on that calculation in 20 USC 1098e(a)(2).

181.   In fact, Mr. Skidmore's reduced payment obligation while he was put into in-school deferment was $0 due to his low to non-existent income.

182.   The Department admits through its own draft regulations that a payment obligation of $0 under that rule qualifies as a payment. See E.g., 34 CFR Sec. 675(a)(2) ("For all IDR plans, a borrower receives a month of credit toward forgiveness by—(i) Making a payment under an IDR plan or having a monthly payment obligation of $0;").

183.   As covered above, Mr. Skidmore has "elected" to have his payment based on the calculation in 20 USC 1098e(b).

184.   Pursuant to 20 USC 1098e(b)(7)(B)(1), those periods of time where Mr. Skidmore only had a payment obligation of $0 would count as "reduced monthly payments" of $0.00.

185.   As a matter of law, the Department is required to count these periods as qualifying actions even if Mr. Skidmore were required to make 300 actions.

186.   Thus, in this case, Mr. Skidmore made a qualifying payment or action in every year, and also on information and belief in every month for 26 years.

187.   Thus, Mr. Skidmore was entitled to a loan forgiveness 25 years later in June or December of 2023, and Mr. Skidmore is entitled to a reimbursement of funds extracted by the Department and/or its agents over and above that amount.

**SAVE Plan Loan Forgiveness**

188.   In 2024, the Biden Administration introduced the SAVE repayment plan together with draft regulations.

189.   The SAVE plan is an income-based repayment plan.

190.   The SAVE plan is a replacement for the PAYE plan that Mr. Skidmore was enrolled in previously.

191.   The Department took all or at least many accounts that were on the PAYE plan and moved them to the SAVE plan.

192.   It then granted loan forgiveness to millions of such SAVE plan participants based on their prior PAYE plan participation.

193.   However, the Department did not include Mr. Skidmore.

194.   On information and belief, it did not move Mr. Skidmore to the SAVE program because he was not actively on the PAYE plan at the time.

195.   However, as discussed above and below, Mr. Skidmore is entitled to the same status as an active participant by virtue of his prior participation in an income based repayment program.

196.   Thus, simply by request, Mr. Skidmore should have been granted the same loan forgiveness as others.

197.   Mr. Skidmore did request in 2024 to be moved to the SAVE program.

198.   However, Mr. Skidmore was told that he could not enroll.

199.   The Department has taken the position in other litigation on the SAVE
program that it has the authority to enact loan forgiveness under the SAVE plan.

200.   Mr. Skidmore agrees, so this is not in dispute here.

201.   Under the authority of 20 USC 1098e(b)(7), the Department had the
authority to create loan repayment plans that enact loan forgiveness for participants
within a period of no more than 25 years.

202.   Based on that authority, the Department set the period of time for loan
forgiveness at 20 years or the equivalent of 240 payments, just as Congress
authorized it to do.

203.   As covered above, according to the Department's position, Mr. Skidmore
has made 276 payments and is thus entitled to a loan forgiveness under this plan.

204.   However, there is again a controversy.

205.   The Department's position appears to be that Mr. Skidmore was not entitled
to the same treatment as an active PAYE participant because he was only
previously on the PAYE program.

206.   However, as covered above, Mr. Skidmore's prior utilization of an income
based repayment program entitles him to the same status and forgiveness as other
active participants.

207.   Mr. Skidmore acknowledges that the implementation of the SAVE plan has
been stayed by injunctions in other federal cases.

208.   However, there is no reason that loan forgiveness in Mr. Skidmore's specific case involves a significant impact to Governmental finances, as argued in other cases (in the Eastern District of Missouri case, it was argued that a mass forgiveness would have significant impacts on government finances and the economy, but that argument does not in any way impede forgiveness in specific cases where individuals are facing financial hardship, forgiveness that would be inconsequential in the vast scheme of the US Government Budget and economy).

209.   The balance of the equities and the circumstances here weigh in favor of a loan forgiveness, and there is no significant impact on the US Government or other third parties.

210.   Moreover, Mr. Skidmore is entitled to a declaratory judgement or injunction in his case to an equal or greater extent as the parties in other litigation are entitled to an injunction.

211.   Additionally, the litigation that is currently blocking the SAVE plan is likely to be stopped within days or weeks.

212.   The new administration has stated it intends to restructure of end the Department of Education.

213.   And, the new administration has stated that it intends to discontinue the SAVE program.

214.   This implies that it will stop fighting law suits that are fighting the stop the implementation of the SAVE program.

215.   It has also stated it intends to do these things on or soon after January 15, 2025.

216.   Unless the Department argues that it was not authorized to implement the SAVE plan, which it obviously has not done, it cannot deny that as soon as the litigation stops, it is required to provide a loan forgiveness to Mr. Skidmore under this program and before discontinuing the SAVE repayment plan.

217.   Mr. Skidmore is thus preserving his right to receive a loan forgiveness under that program now—just as millions of other people did before the stay was enacted—with this litigation.

218.   Regardless of when it occurs, when it does occur, unless there has been a clear ruling against the program, Mr. Skidmore has a right to receive the same treatment provided to millions of others.

219.   Mr. Skidmore requests that this Court provide a declaratory judgement that he is at least entitled to a student loan forgiveness as of 2018 and a refund of payments since 2018.

### No Evidence or Basis for Any Claim

220.   As noted above, Mr. Skidmore also disputes the Department's overall claim of the amount it claims is due.

221.   The payment and interest calculations that have been applied to Mr. Skidmore's loans have been incorrect and/or unjustified by the statutory authority.

222.   For example, Mr. Skidmore finds no authority for the Department to establish a repayment plan that actually builds the debt burden of a student without repaying the interest and principle required to "repay" the loan, which is the plan the Department put Mr. Skidmore on—unknown to him.

223.   The balances claimed by the Department to be owed are not mathematically or statutorily justified.

224.   Instead, the Department claims for any balance and/or interest due have been consistently inflated over time through improper record keeping, improper calculation of interest, improper consolidation, and/or other errors or negligent/reckless/knowing/intentional misstatement of the amounts involved.

225.   Based on its repeated refusal to provide the information, the Department does not have promissory notes, the account history, history of payments, calculation of interest/balance, and other information requested by Mr. Skidmore.

226.   The Department cannot evidence or reasonably justify its claims regarding any balance or interest claimed to be owed by him.

227.   Without this information, the Department has no reasonable basis for its claims against Mr. Skidmore.

228.   To the extent that the Department is unable to clearly evidence and justify it's claims, the claims against Mr. Skidmore for further money due should be judged void and baseless by this Court in a declaratory judgement.

229.   If the Department is able to justify some, but not all of its claim, then this Court should issue a declaratory judgement that Mr. Skidmore is only required to pay to the extent that the Department has justified its claims and those claims have not been paid by Mr. Skidmore already.

230.   Additionally, for any money that has been extracted from Mr. Skidmore without a proper basis, this Court should grant a declaratory judgement that the money must be returned.

231.   Mr. Skidmore requests that this Court provide a declaratory judgement that based on facts and law above, the Department is not entitled to its claims in full or in part and/or that Mr. Skidmore is entitled to a loan forgiveness and refund.

### Count 2 – Violation of Administrative Procedures Act Agency Action in Excess of Statutory Jurisdiction and in Violation of Separation of Powers U.S. Const. art. I, § 1
### (Department and Secretary)

232.   Plaintiff incorporates by reference all prior and following paragraphs.

233.   The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

234.   The Department is an "agency" under the APA. *Id.* § 701(b)(1).

235.   The Department's public policy statements on the interpretation and application of the relevant laws at https://studentaid.gov/announcements-events/ constute "action," "findings," "conclusions," and/or "rules."  *Id.* § 701(b)(2).

236.   Specifically, the Department policies on account acjustment, loan forgiveness, and other topics are relevant here.

237.   The decision not to grant Mr. Skidmore a loan forgiveness under an account adjustment or otherwise is an "agency action," "finding," and/or "conclusion" under the APA. Id. § 701(b)(2).

238.   To be final, an agency's action must meet two requirements. "First, the action must mark the 'consummation' of the agency's decisionmaking process." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted).

239.   Both are met here.

240.   The decision not to grant Mr. Skidmore a loan forgiveness is "final" because the Department just completed a complete, "one-time" account adjustment that it

stated was intended to complete all necessary adjustments to a person's status in

working towards loan forgiveness.

241.   The decision to maintain its claims for payments against Mr. Skidmore and

not forgive loans has also continued for several months now, despite repeated

requests by Mr. Skidmore, indicating a finality and the passage of far more than

what would have been a reasonable time to consider the matter still open or

unfinished.

242.   Furthermore, from Mr. Skidmore's perspective, given his financial

condition, the decision must be considered final because it is driving him to

irreversible negative financial consequences.

243.   Additionally, the decision should be considered final because Mr. Skidmore

requested a loan forgiveness and has not received an answer within a reasonable

time.

244.   The decision not to grant forgiveness is also "final" because the decision is

the culmination of a months-long process targeted for completion by the end of the

year, according to MOHELA and Department staff.

245.   The Secretary/Department's policies and procedures with regards to loan

forgiveness are (A) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law; (B) contrary to constitutional right, power, privilege, or

immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short

of statutory right; [or] (D) without observance of procedure required by law." 5

U.S.C. § 706(2)(A)-(D).

246. Specifically, as laid out above, the decision to not grant a loan forgiveness

under the SAVE program is arbitrary, capricious, not in accordance with the law,

contrary to Mr. Skidmore's constitutional due process and equal treatment rights,

in excess of statutory limitation to not extend payments beyond 25 years in time,

and without the proper procedures required by 20 USC 1098e.

247. Specifically, as laid out above, the decision to not grant a loan forgiveness

under the 1098e(b)(7) is arbitrary, capricious, not in accordance with the law,

contrary to Mr. Skidmore's constitutional due process and equal treatment rights,

in excess of statutory limitation to not extend payments beyond 25 years in time,

and without the proper procedures required by 20 USC 1098e.

248. Specifically, as laid out above, the Department's claims against Mr.

Skidmore are overally arbitrary and capricious, not in accordance with the law,

contrary to Mr. Skidmore's constitutional due process and equal treatment rights,

in excess of statutory limitation and without proper procedures required by statutes

defining the Department's calculation of interest, payments, and balances.

249. The Secretary/Department's determinations that Mr. Skidmore does not

qualify for loan forgiveness in general are also arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; (B) contrary to constitutional

right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

250. "[U]nexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (internal quotation marks omitted).

251. Here, the Department has acted with unexplained capriciousness has not legal basis for and has not clarified any basis for communicating to Mr. Skidmore that his prior status in the PAYE repayment plan, prior periods of undisputed partial financial hardship, and other periods didn't count towards loan forgiveness.

252. As noted above, Mr. Skidmore has repeatedly asked for the Department to clarify its basis, but it has refused.

253. Indeed, it's own representatives have admitted to the capricious nature of the Department's management of loan forgiveness.

254. Here, as noted above, the Department has not clarified any legal basis and has no basis for extending the period of time during which Mr. Skidmore is in repayment beyond the maximum 25 years set by Congress.

255. The Department also has not clarified any basis and has no basis for finding that periods during which Mr. Skidmore was experiencing a partial financial

hardship and elected to have payments based on his partial financial hardship do not satisfy the requirements of 20 USC 1098e(b)(7).

256.   Additionally, the Department has a duty to provide borrowers with promissory notes, payment/balance/interest calculations, account history (payment date, amount, payment plan, deferment status, etc.) so that borrowers can understand the Department's claims against them and the options available to them to make informed decisions about payments plans to enroll in and other actions to take.

257.   This is also a contractual duty under Michigan law because every contract includes a duty of good faith and fair dealing.

258.   The Department has capriciously, improperly, without justification in the law and in violation of the standards outlined above, refused to comply with these duties.

259.   Thus, Mr. Skidmore is also entitled to an injunction on this basis.

260.   Mr. Skidmore is entitled to an injunction that the Department (1) immediately provide the relevant information to Mr. Skidmore to justify their claims and calculation of payments they demand, (2) after provision allow Mr. Skidmore to change his payment plan or make payments to allow him to qualify for loan forgiveness now, and/or (3) grant Mr. Skidmore a loan forgiveness and refund consistent with the reasons stated above.

## CONCLUSION

261.   In conclusion, under its own express pronouncements and the unambiguous statutes that Mr. Skidmore was entitled to a student loan forgiveness either in 2018 or 2023.

262.   Instead, the Department maintains that Mr. Skidmore must continue in repayment status beyond the 25-year maximum period established by Congress.

263.   Mr. Skidmore is entitled to an injunction to halt the Department/Secretary's improper and legally unjustifiable actions as outlined above.

264.   Mr. Skidmore will be irreparably harmed in the absence of an injunction both because he may lose the ability to obtain a loan forgiveness to which he is entitled in the future, because of his overall financial condition and the continuing debt claims against him, and other factors.

265.   Mr. Skidmore also satisfies the other requirements for an injunction and the balance of the factors and equities is in Mr. Skidmore's favor.

266.   If for any reason, this Court decides that Mr. Skidmore is not entitled to such a forgiveness, Mr. Skidmore is entitled to an injunction ordering the Defendants to immediately provide previously requested information and clarifications so that Mr. Skidmore can determine with specificity what his status is and avoid imminent irreparable injury to his finances by seek qualification for a loan forgiveness.

## PRAYER FOR RELIEF AND DEMAND FOR JUDGEMENT

267.    Plaintiff respectfully requests the following of this Court:

    A.    An order and <u>declaratory judgment</u> declaring that:

        i.    The Department and Secretary shall immediately provide Mr. Skidmore with the following basic accounting information and basic information on the Defendants' position to enable a proper preparation for  ahear and informed decision-making process in this litigation:

            a.    Promissory notes for each loan claimed, an account history of the status of each of Mr. Skidmore's loans for each month from June of 1998 to the present including the month/date, the loan repayment status, the amount of any payment made, the payment plan under which each payment was made, the calculation of payment, interests, and balance for each month, the interest rate applicable to each month, a copy of all policies, procedures, guidelines, rules, considerations, or other materials used by the Department in determining loan forgiveness eligibility under the SAVE plan, PAYE plan, or as a part of any loan forgiveness under 20 USC 1098e, a copy of any report, analysis, determination, calculation, assessment, decision, or other artifact used in the decision-making process

leading up to a determination regarding Mr. Skidmore's

qualification for loan forgiveness, a copy of any internal

communication regarding Mr. Skidmore's requests for loan

forgiveness and/or other communications in the past year, a

copy of any records of calls made by Mr. Skidmore to the

Department of Education and/or to any servicer of Mr.

Skidmore's loans (including but not limited to any account

notes, any recordings of calls made), a copy of any other

communication between Mr. Skidmore and the Department or

any loan servicer, a copy of all reports, analyses, assessments,

kpi performances, complaints and other information indicating

the Defendants' knowledge of MOHELA performance as a

servicer (including but not limited to training levels of agents,

incorrect information communication incidents, dropped calls,

call wait times, improper loan handling, improper payment

calculation, loan forgiveness communications, and/or other

customer service complaints, and a an answer to this

Complaint,

ii.     Following receipt of this information, Mr. Skidmore shall have

at least one week to review and digest this information and make an

informed decision regarding any claims to further press in this litigation via motion or hearing,

iii.   Mr. Skidmore is no longer required to make any payments, is only required to make a specific number of payments, and/or is entitled to a refund because the Department has not evidenced loan obligations, or has only partially done so.

iv.   The Department has materially breached contractual, statutory, tort, and/or other duties to Mr. Skidmore to appropriately service his loans, entitling him to damages.

v.   A finding that using MOHELA for student loan services is not reasonable and thus a material breach of any loan agreement.

vi.   Alternatively, Mr. Skidmore was entitled to a forgiveness of the entire balance claimed by Defendants as of June 2019, and entitled to a refund of moneys paid after that date,

vii.   That any policy, procedure, or rule used by the Defendants in interpreting 20 USC 1098e as requiring more than a single payment under the PAYE program, as extending longer than 25 years from the time a student loan borrower makes his or her first qualifying action under 20 USC 1098e, or as not allowing for an election to have payments based on a $0 payment obligation during a period of partial

financial hardship violates the APA and is thus void because it is

contrary to law, in excess of statutory authority, arbitrary and

capricious, an abuse of discretion, and without observance of

procedure required by law,

viii.    That as a result, Mr. Skidmore is also entitled to a loan

forgiveness as of December 2023 and thus entitled to a refund of

overpayments;

B.      If this Court finds Mr. Skidmore is, for any reason, not entitled to a

declaratory judgment, Mr. Skidmore requests an underline injunction ordering the

Defendants to take actions consistent with the findings above in forgiveness of any

debt claims and refunds;

C.      Award Mr. Skidmore reasonable costs, expenses, disbursements, fees, and

interest associated with this litigation, including but not limited to any limited

scope attorney fees that Mr. Skidmore is forced to incur to assist him in

prosecuting this matter (Mr. Skidmroe is *pro se* due to lack of financial resources,

but may need assistance in navigating this case because he is not an attorney); and

D.      Grant any additional and further relief as the Court may deem just and

appropriate.

## JURY DEMAND

Mr. Skidmore demands a jury trial on any facts deemed triable by this Court.

Respectfully Submitted,

/s/ Daniel Skidmore
Daniel Skidmore
1053 Academy Drive
Rochester Hills, MI 48307
248-979-8253
daniel.g.skidmore@gmail.com

January 10, 2025

## PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?

☐ Yes
☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☐ Yes
☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

# New Lawsuit Check List

**Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.**

| | |
|---|---|
| ☒ | Two (2) completed **Civil Cover Sheets.** |

| | |
|---|---|
| ☒ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank. <br><br> _2_ + 2 = _4_ **Complaints.** <br> # of Defendants  Total <br><br> Received by Clerk: _____ Addresses are complete: _____ |

CLERK TO AFFIX
CASE ASSIGNMENT
LABEL HERE

| | |
|---|---|
| ☒ | If any of your defendants are **government agencies**: <br> Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. |

| If Paying The Filing Fee: | If Asking That The Filing Fee Be Waived: |
|---|---|
| ☒ Current new civil action filing fee is attached. <br><br> Fees may be paid by check or money order made out to: <br><br> ***Clerk, U.S. District Court*** <br><br> Received by Clerk: _____ Receipt #:_____ | ☐ Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms. <br><br> Received by Clerk: _____ |

**Select the Method of Service you will employ to notify your defendants:**

| Service via Summons by Self | Service by U.S. Marshal (Only available if fee is waived) | Service via Waiver of Summons (U.S. Government cannot be a defendant) |
|---|---|---|
| ☒ Two (2) completed **summonses** for each defendant including each defendant's name and address. <br><br><br><br><br><br> Received by Clerk: _____ | ☐ Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint. <br><br> ☐ Two (2) completed **Request for Service by U.S. Marshal** form. <br><br> Received by Clerk: _____ | ☒ You need not submit any forms regarding the Waiver of Summons to the Clerk. <br><br> Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need: <br> • One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant. <br> • Two (2) **Waiver of the Service of Summons** forms per defendant. <br><br> Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

**Clerk's Office Use Only**

Note any deficiencies here:

Rev. 4/13

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

County in which action arose *Oakland, MI*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
*Daniel Skidmore*

**DEFENDANTS**
*U.S. Department of Education*
*Miguel A. Cardona in his official capacity as Secretary of the Department of Education*

**(b)** County of Residence of First Listed Plaintiff *Oakland Cty, MI*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 891 Agricultural Acts |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | ☐ 895 Freedom of Information Act |
| | | ☐ 550 Civil Rights | | ☐ 896 Arbitration |
| | | ☐ 555 Prison Condition | | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 462 Naturalization Application | |
| | | | ☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
*20 USC 1098e, 5 USC 701 et seq., 5 USC 702, 705, 706, etc, FRCP 57*
Brief description of cause:
*Declaratory Judgement + Injunction regarding student loan claims*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE

DOCKET NUMBER

DATE *1/10/25*

SIGNATURE OF ATTORNEY OF RECORD
*D Skidmore*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____