UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, ET AL.,

Defendants.
_______________________________________/

Civil No. 25-10084

Honorable Laurie J. Michelson
Mag. Judge Anthony P. Patti

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants, through their attorneys, Jerome F. Gorgon, Jr., United States Attorney for the Eastern District of Michigan, and Jennifer L. Newby, Assistant United States Attorney, move this Court for dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The undersigned certifies that she contacted Plaintiff via email on June 2, 2025, explaining the basis for dismissal as to each count. Concurrence was not obtained.

In support of their motion, Defendants rely on the accompanying brief and documents on file with this Court.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

By: /s/ Jennifer L. Newby
Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendants
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

Dated: June 3, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, ET AL.,

Defendants.

_______________________________________/

Civil No. 25-10084

Honorable Laurie J. Michelson
Mag. Judge Anthony P. Patti

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

## STATEMENT OF THE ISSUES PRESENTED

1. Should the Court dismiss Counts 1, 2, 3, and 6 for lack of subject matter jurisdiction where Plaintiff's claims are founded upon a contract and should have been brought in the Federal Court of Claims, and/or there is no waiver of sovereign immunity?

2. Should the Court dismiss Counts 2, 4, 9, and 10 for failure to state a claim where Plaintiff fails to allege facts showing he is currently entitled to loan forgiveness under 5 U.S.C. § 1098e(b)(7)?

3. Should the Court dismiss Count 5 for failure to state a claim where relief is not available for inaccurate reporting and Plaintiff fails to allege facts showing that he disputed the issue to a credit reporting agency who provided notice of the dispute to the Department, or that his dispute is not frivolous?

4. Should the Court dismiss Count 7 for failure to state a claim where Plaintiff fails to allege facts showing actual damages due to alleged disclosure of his information and the documents he seeks are not "records" for purposes of the Privacy Act?

5. Should the Court dismiss Count 8 for failure to state a claim where Plaintiff fails to allege facts showing he exhausted his administrative remedies?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)

20 U.S.C. § 1098e(b)(7)

34 C.F.R. § 685.209(k)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... v

INTRODUCTION .......... 1

BACKGROUND .......... 2

- A. Student loan forgiveness under REPAYE or SAVE is enjoined. .......... 2
- B. Skidmore seeks loan forgiveness and other relief. .......... 3

STANDARD OF REVIEW .......... 7

LAW AND ARGUMENT .......... 8

- A. The Court lacks jurisdiction for several claims. .......... 8
  - 1. The Court lacks jurisdiction for claims founded upon a contract. .......... 9
  - 2. The Court lacks jurisdiction for allegations under Count 2 that are founded upon a contract. .......... 11
  - 3. The Court lacks jurisdiction for Count 6. .......... 12
- B. Skidmore fails to state a claim in Counts 2, 4, 9 and 10. .......... 12
- C. Skidmore fails to state a claim in Count 5. .......... 17
- D. Skidmore fails to state a claim in Counts 7 and 8. .......... 18
  - 1. Skidmore does not state a Privacy Act violation. .......... 18
  - 2. Skidmore does not state a FOIA violation. .......... 20

CONCLUSION .......... 24

CERTIFICATION OF SERVICE .......... 25

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007) ....................7

*Alaska v. United States Dep't of Educ.*, 739 F.Supp.3d 873 (D. Kan. June 24, 2024) ....................3

*Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226 (6th Cir. 2005)....................21

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ....................8

*Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611 (6th Cir. 2012) ....................18

*Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255 (1999) ....................8

*Doe v. Chao*, 540 U.S. 614 (2004)....................18

*Dumas v. GC Servs., L.P.*, No. 18-12992, 2019 WL 529260 (E.D. Mich. Feb. 11, 2019)....................12

*F.A.A. v. Cooper*, 566 U.S. 284 (2012) ....................18

*Fields v. I.R.S.*, No. 12-14753, 2013 WL 3353921 (E.D. Mich. July 3, 2013)....................21

*Gingles v. U.S. Dep't of Housing and Urban Dev.*, No. 22-11530, 2022 WL 16951643 (E.D. Mich. Nov. 15, 2022)....................11

*Hill v. Blue Cross & Blue Shield of Michigan,* 409 F.3d 710 (6th Cir. 2005)....................7

*Iskander v. F.B.I.*, No. 12-02653, 2013 WL 1572439 (N.D. Ohio Apr. 12, 2013)....................22

*Jackson v. United States,* 751 F.3d 712 (6th Cir. 2014) ....................8

*Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ....................23

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................8, 9

*Lamb v. I.R.S.*, 871 F. Supp. 301 (E.D. Mich. 1994) ..............................................23

*Lane v. Pena*, 518 U.S. 187 (1996)..........................................................................9

*Mackinac Ctr. for Pub. Pol'y v. Cardona,*
102 F.4th 343 (6th Cir. 2024) .......................................................................... 12, 17

*Manuel v. Veterans Admin. Hosp.*, 857 F.2d 1112 (6th Cir. 1988)................... 19, 20

*Martin v. Overton*, 391 F.3d 710 (6th Cir. 2004) ......................................................8

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)................................10, 11

*Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).......................................... 2, 3, 13

*Moir v. Greater Cleveland Regional Transit Auth.,*
*895* F.2d 266 (6th Cir. 1990).....................................................................................7

*Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir. 1987)............................7

*Nat'l Sec. Couns. v. C.I.A.*, 931 F. Supp. 2d 77 (D.D.C. 2013) ..............................21

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)..........................................15

*Ocon-Fierro v. Drug Enf't Admin.*, No. 10-1228,
2013 WL 869911 (W.D. Mich. Feb. 15, 2013)..........................................................22

*Reetz v. United States*, 224 F.3d 794 (6th Cir. 2000) ...............................................9

*Rimmer v. Holder*, 700 F.3d 246 (6th Cir. 2012) ....................................................11

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996)....................................................................................10

*Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757
(E.D. Mich. 2009).......................................................................................................8

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
974 F.3d 756 (6th Cir. 2020)....................................................................................13

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010).......................................16

*U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136 (1989).......................................23

*United States v. Haynes*, 55 F.4th 1075 (6th Cir. 2022)..........................................13

*United States v. Hohri*, 482 U.S. 64 (1987) ....................9

*United States v. Mitchell,* 463 U.S. 206 (1983) ....................9

*Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989) ....................8

**Statutes**

15 U.S.C. § 1692a(6)(C) ....................12

20 U.S.C. § 1085(o) .................... 12, 13, 16, 17

20 U.S.C. § 1087a ....................2

20 U.S.C. § 1087e(d)(1) ....................2

20 U.S.C. § 1098(b)(7)(B) ....................16

20 U.S.C. § 1098e(b)(1) ....................16

20 U.S.C. § 1098e(b)(1) ....................16

20 U.S.C. § 1098e(b)(7) .................... passim

20 U.S.C. § 1098e(b)(7)(B) .................... 4, 14, 15

20 U.S.C. § 1087e(d)(1)(A)–(D) ....................2

20 U.S.C. § 1078(b)(9)(A) ....................2

28 U.S.C. § 1346(a)(2) ....................9

28 U.S.C. § 1491 ....................9

5 U.S.C. § 552(6)(B) ....................22

5 U.S.C. § 552(a)(1) ....................23

5 U.S.C. § 552(a)(2) ....................23

5 U.S.C. § 552(a)(3)(A) ....................23

5 U.S.C. § 552a(a)(4) .................... 19, 20

5 U.S.C. § 552a(a)(5) .................... 19, 20

5 U.S.C. § 552a(d)(1) ....................19

5 U.S.C. § 702 ....................15

5 U.S.C. § 704 ....................11

**Other Authorities**

Black's Law Dictionary (12th ed. 2024).....16

**Rules**

Fed. R. Civ. P. 12(b)(6).....7

**Regulations**

34 C.F.R § 685.209(k)(1).....4
34 C.F.R. § 5.12.....24
34 C.F.R. § 5.21(e).....22
34 C.F.R. § 5.40.....21
34 C.F.R. § 5b.5.....6, 20
34 C.F.R. § 682.215.....16
34 C.F.R. § 682.215(a)(4).....4
34 C.F.R. § 682.215(e).....4
34 C.F.R. § 685.209.....3, 5
34 C.F.R. § 685.209(k).....2

# INTRODUCTION

Plaintiff Daniel Skidmore took and benefited from student loans to fund his undergraduate and graduate education. Skidmore states he has had student loans since 1998 and has always paid as due. Despite this, he now makes contradictory claims asserting that there is no enforceable contract because he does not believe the U.S. Department of Education has documentation of his loans, or that he has enforceable student loans but they should already have been forgiven, or that he has enforceable student loans but he does not owe as much as the Department claims. Skidmore also asserts he is entitled to sweeping document production, damages, adjustment to credit reporting, and other relief.

Skidmore does not allege facts to show he is currently entitled to loan forgiveness. Nor does he allege facts that establish he is entitled to any other relief. Although Skidmore suggests he could not navigate the student loan forgiveness process based on the information available to him, *millions* of student loan borrowers have obtained loan forgiveness using the many tools the Department and its servicers make publicly available. Skidmore's inability to obtain student loan forgiveness under his current circumstances does not amount to liability against the Department or an obligation to provide an accounting of his decades' long student loan history to prove he owes the money he borrowed under the terms to which he agreed. Accordingly, Defendants move for dismissal of this action.

## BACKGROUND

### A. Student loan forgiveness under REPAYE or SAVE is enjoined.

The William D. Ford Federal Direct Loan Program (Direct Loan Program) is authorized by Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087a *et seq*. Under the Direct Loan Program, the Department makes loans directly to borrowers, who repay the loans directly to the Department. *Id*. As amended, the Education Act requires the Department to give borrowers the choice of various plans to repay those direct loans. *See* 20 U.S.C. § 1087e(d)(1). The generally applicable options are: (1) a standard repayment plan with fixed payments over a period not exceeding ten years; (2) a graduated repayment plan with increasing payments over a period not exceeding ten years; (3) an extended repayment plan with fixed or graduated payments over a period not exceeding twenty-five years; or (4) an income contingent repayment plan with varying payments based on income over a period not exceeding twenty-five years. *See Missouri v. Trump*, 128 F.4th 979, 985 (8th Cir. 2025) (citing 20 U.S.C. §§ 1078(b)(9)(A), 1087e(d)(1)(A)–(D)).

The Department offers the opportunity for loan forgiveness under certain circumstances including under 20 U.S.C. § 1098e(b)(7). To qualify for loan forgiveness under § 1098e(b)(7), a borrower must be in an income-driven repayment plan. *See* 20 U.S.C. § 1098e(b)(7); 34 C.F.R. § 685.209(k).

In June 2023, the Secretary signed a rule amending requirements for income-driven repayment plans. *See* 34 C.F.R. § 685.209 (the "SAVE rule"). The rule made various changes and was named the Saving on a Valuable Education (SAVE) plan. *Id*. As part of the same regulatory package, the Department also implemented a one-time adjustment to allow many borrowers to get credit for payments toward forgiveness that otherwise would not have counted. *See* Payment Count Adj., Ex. 1, available at https://studentaid.gov/announcements-events/idr-account-adjustment (last visited April 24, 2025).

The SAVE rule was scheduled to take effect in July 2024. In April 2024, legal challenges to the SAVE rule were initiated by several states. *See Missouri*, 128 F.4th 979; and *Alaska v. United States Dep't of Educ*., 739 F.Supp.3d 873 (D. Kan. June 24, 2024). In February 2025, the Eighth Circuit issued a nationwide preliminary injunction enjoining loan forgiveness under both the SAVE rule and the preexisting Revised Pay As You Earn (REPAYE) program. *See Missouri*, 128 F.4th at 998.

**B. Skidmore seeks loan forgiveness and other relief.**

According to Skidmore, he initially obtained student loans to fund his undergraduate education "in the late 1990s." (Am. Compl., ECF No. 18, PageID.293). He alleges that repayment was deferred until December 1998, where he entered repayment for several years. (*Id.*). Skidmore states that in 1998 and

other unidentified "periods" he participated in "income-based repayment" due to a "partial financial hardship." (*Id*. at PageID.315–316). Partial financial hardship exists when the standard student loan repayment based on a 10-year repayment plan would exceed a certain threshold relative to the borrower's income. *See* 34 C.F.R. § 682.215(a)(4). To qualify for income-based repayment due to partial financial hardship, the borrower must submit documentation and must re-submit each year to remain in the program. *See* 34 C.F.R. § 682.215(e).

Skidmore took additional loans to attend graduate school from 2003 to 2006, which deferred his repayment. (Am. Compl., ECF No. 18, PageID.293). He claims he consolidated his loans and entered repayment "sometime in 2005-2007." (*Id*.). Department records show that Skidmore has two loans with the Department, a Direct Consolidated Subsidized Loan and a Direct Consolidated Unsubsidized Loan. (Loan Details, Ex. 2). He last entered repayment on his consolidated loans in August 2005, but his payments were deferred until February 2007. *Id*. at DoE 6, 13. Since at least that time, Skidmore has been in a graduated repayment plan or a fixed payment plan—not an income-driven repayment plan. *Id*. at DoE 8, 15. Thus, none of Skidmore's payments since at least February 2007 qualified towards loan forgiveness. *See* 34 C.F.R § 685.209(k)(1).

Nonetheless, based on his own interpretation of 20 U.S.C. § 1098e(b)(7)(B), Skidmore asserts he was entitled to forgiveness as of December 2023, 25 years

after his first undergraduate loan entered repayment. (Am. Compl., ECF No. 18, PageID.315, 319). Skidmore claims the Department told him he had 276 qualifying payments and that he would not get loan forgiveness until he had 300 qualifying payments, the equivalent of 25 years. (*Id*. at PageID.317). He argues both that the 25-years should be measured as a linear period regardless of deferment and that his time in deferment where he paid $0 should count as qualifying payments towards forgiveness. (*Id*. at PageID.304–305).

The forgiveness payment calculation of 276 qualified payments was due to the one-time adjustment which was completed in January 2025 and gave borrowers credit for payments made outside of an IDR plan before August 2024, but did not give credit for time spent in an in-school deferment status. *See* Ex. 1 (noting that the adjustment is only for payments through August 2024 and specifically excluding enrollment related deferment periods). The SAVE regulatory changes in 34 C.F.R. § 685.209 allowed previously non-qualifying payments to be counted if the borrower entered an income-driven repayment plan—which Skidmore did not do. It is unclear at this time whether the credit towards forgiveness given to non-qualifying payments under the one-time adjustment will survive legal challenges. Even if Skidmore retains credit for the payments, he did not have sufficient qualifying payments as of August 2024 to entitle him to forgiveness at that time,

and because he is not in an IDR plan, none of his payments since the one-time adjustment count towards forgiveness. *See* Exs. 1, 2.

Skidmore asserts he has tried to obtain documents using a Freedom of Information Act (FOIA) request and a request under the Privacy Act. (Am. Compl., ECF No. 18, PageID.288). Skidmore's requests seek exceedingly broad categories of documents. (FOIA, Ex. 3; Priv. Act, Ex. 4). The Department informed Skidmore as to his FOIA request that it would take at least 6 months to respond. (Am. Compl., ECF No. 18, PageID.327). As to his Privacy Act request, the Department received his request in April 2025 and is awaiting documentation before preparing a response.[1] (*Id.* at PageID.325). Since filing the action, Defendants provided Skidmore with his Master Promissory Notes and other loan documents showing his current payment plan, his prior payment plans, his loan balance, and other information.

Skidmore filed this action on January 10, 2025. (Compl., ECF No. 1). In response to a motion to dismiss, he filed an amended complaint on May 20, 2025, setting forth various claims related to the lack of loan forgiveness and failure to produce documents. (Am. Compl., ECF No. 18). Defendants move for dismissal of all claims.

---

[1] The Department is awaiting receipt of a Certification of Identity from Skidmore, which he claims he sent by mail. *See* 34 C.F.R. § 5b.5. The form had not been received as of May 30, 2025.

## STANDARD OF REVIEW

When a 12(b)(1) motion is made, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Auth., 895* F.2d 266, 269 (6th Cir. 1990). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

Dismissal pursuant to Rule 12(b)(6) is appropriate where the pleadings have failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court accepts all the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Hill v. Blue Cross & Blue Shield of Michigan,* 409 F.3d 710, 716 (6th Cir. 2005). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the

claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Skidmore is proceeding pro se. "Pro se plaintiffs are treated to less stringent standards, but 'they are not automatically entitled to take every case to trial.'" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation omitted). "The leniency granted to pro se petitioners…is not boundless." *Id*. "[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Id*. *See also Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (internal citations omitted) ("[C]ourts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him."). Courts have not "abrogate[d] basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## LAW AND ARGUMENT

### A. The Court lacks jurisdiction for several claims.

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999); *Jackson v. United States,* 751 F.3d 712, 716 (6th Cir. 2014). "It is axiomatic that the United States may not be sued without

its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212 (1983). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). The burden of establishing a waiver of sovereign immunity "rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. If the plaintiff "cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000).

**1. The Court lacks jurisdiction for claims founded upon a contract.**

This Court lacks jurisdiction for Counts 1 and 3 because they are founded upon Skidmore's student loan contracts with the Department. Pursuant to the Tucker Act, 28 U.S.C. § 1491, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded…upon any express or implied contract with the United States." Under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), the district court has concurrent jurisdiction with the Federal Court of Claims to hear "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded…upon any express or implied contract with the United States." Taken together, "Tucker Act claims for more than $10,000 can be brought only in the United States Claims Court." *United States v. Hohri*, 482 U.S. 64, 67, n.1 (1987).

Because Skidmore's claims in Counts 1 and 3 are founded upon his student loan contracts, the Court lacks jurisdiction. Skidmore admits that he entered student loan contracts with the Department. (Am. Compl., ECF No. 18, PageID.293). To determine if a claim is at its essence a contract action "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996) (applying the *Megapulse* test in "determination of whether the action is essentially a contract dispute" for purposes of the Contract Disputes Act).

In Count 1, Skidmore alleges that his student loan contracts with the Department are no longer enforceable based on alleged miscalculations of payments, interest, and loan terms.[2] (Am. Compl., ECF No. 18, PageID.297–299). Skidmore claims that due to the alleged miscalculations he is either entitled to an order that there is no longer an enforceable contract and refund of money paid under the contract, or clarification of the terms of the contract. (*Id.* at PageID.299). Both the source of his rights and the relief he seeks are based on the existence and alleged breach of his student loan contracts. In Count 3, Skidmore explicitly alleges the Department breached his student loan contracts in various ways. (*Id.* at

[2] Because Skidmore does not allege when the purported miscalculations occurred, the Department is unable to determine whether his contractual claims also fail as untimely.

PageID.306–315). Both claims are founded upon a contract. *Megapulse,* 672 F.2d at 968. Skidmore also concedes that more than $10,000 is in controversy. (Am. Comp., ECF No. 18, PageID.292). Accordingly, this Court lacks subject matter jurisdiction over Counts 1 and 3 and they should be dismissed.

**2. The Court lacks jurisdiction for allegations under Count 2 that are founded upon a contract.**

The Court lacks jurisdiction for contract claims asserted as a violation of the Administrative Procedure Act in Count 2. Inasmuch as Skidmore claims that Defendants breached a contractual obligation by not providing the documents he demands, the Court does not have jurisdiction under the APA to hear such a claim. *See Gingles v. U.S. Dep't of Housing and Urban Dev*., No. 22-11530, 2022 WL 16951643, *3 (E.D. Mich. Nov. 15, 2022) (holding APA does not waive sovereign immunity for injunctive relief based on contract claims because Tucker Act impliedly forbids such relief) (citing cases). Nor does the Court have jurisdiction to review violations of FOIA and the Privacy Act under the APA, rather than under their own statutory scheme. *See Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) (court's ability to review failure to disclose under FOIA "clearly provides an alternate adequate remedy in court and thus triggers [5 U.S.C.] § 704's bar on claims brought under the APA").

**3. The Court lacks jurisdiction for Count 6.**

The Court lacks subject matter jurisdiction for Skidmore's claim under the Fair Debt Collection Practices Act (FDCPA) because there is no waiver of sovereign immunity. *See* 15 U.S.C. § 1692a(6)(C) ("debt collector" does not include "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties"); *Dumas v. GC Servs., L.P.*, No. 18-12992, 2019 WL 529260, at *3 (E.D. Mich. Feb. 11, 2019) ("The Sixth Circuit has not addressed the issue of whether the FDCPA contains a waiver of sovereign immunity. However, courts addressing the issue have uniformly held that the FDCPA does not contain such a waiver.) (citing cases).

**B. Skidmore fails to state a claim in Counts 2, 4, 9 and 10.**

Skidmore fails to allege facts showing he is entitled to loan forgiveness under 20 U.S.C. § 1098e(b)(7) regardless of the theory asserted or the form of relief sought. For a borrower to be entitled to forgiveness under 20 U.S.C. § 1098e(b)(7), the borrower must have elected to participate in income-based repayment at any time and have "made…payments" under certain circumstances or was in deferment due to an economic hardship under 20 U.S.C. § 1085(o) "for a period of time prescribed by the Secretary, not to exceed 25 years." *See Mackinac Ctr. for Pub. Pol'y v. Cardona,* 102 F.4th 343, 348 (6th Cir. 2024) ("Under [Income

Driven Repayment] plans, the Department of Education will forgive a student-loan debt after the borrower makes the number of monthly payments required."); *Missouri*, 112 F.4th at 534 (Secretary shall forgive principal and interest "once an [Income Based Repayment] borrower meets certain requirements").

"Statutory interpretation starts (and customarily ends) with the text of the statute." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 761 (6th Cir. 2020). Congress unambiguously made clear that there are two requirements under § 1098e(b)(7), one in subsection (A) and one in subsection (B), by using the word "and." *United States v. Haynes*, 55 F.4th 1075, 1078 (6th Cir. 2022) ("the word 'and' is conjunctive rather than disjunctive"). That a borrower at any time elected to participate in an income-based repayment plan is only step one. Under subsection (B), to obtain forgiveness, the borrower must also have met "1 or more of the following requirements…for a period of time prescribed by the Secretary, not to exceed 25 years." The requirements are either that the borrower "made payments" under various conditions or was in deferment "due to an economic hardship described in section 1085(o)." The statute unambiguously requires the borrower to both have been in an income-based repayment plan for any length of time and to have "made payments" or been in deferment for economic hardship for a period not exceeding 25 years.

Skidmore interprets the phrase "not to exceed 25 years," as being measured linearly from the start of repayment. (Am. Compl., ECF No. 18, PageID.315, 319) (asserting he is entitled to forgiveness in December 2023, because his first loan repayment started in December 1998). It is not necessary for the Court to decide whether Skidmore's interpretation is correct because even under his interpretation he does not allege facts to show he is entitled to loan forgiveness under § 1098e(b)(7).

Skidmore ignores the language of the statute that requires 25 years *of making qualified payments*. Assuming Skidmore's interpretation applies that payments must be made for 25 years consecutively from the time of first repayment; he admits that he has not been in an income-based repayment plan or had a partial financial hardship for 25 straight years. (Am. Compl., ECF No. 18, PageID.311–312, 315–316). Loan records confirm that since 2005, Skidmore has been in either a graduated or extended repayment plan. *See* Loan Details, Ex. 2. Skidmore does not allege facts that entitle him to forgiveness under his own interpretation of 20 U.S.C. § 1098e(b)(7)(B) because he has not alleged—and cannot—that he made qualifying payments for 25-years straight.

Skidmore is also not entitled to forgiveness under the agency's interpretation that § 1098e(b)(7)(B) requires 25-years' worth of qualifying payments, i.e. 300 payments, which do not have to be consecutive. Under the best-case scenario for

Skidmore, at the time of the putative one-time adjustment which gave him credit for payments that would otherwise not qualify, he had 276 qualifying payments. (Am. Compl., ECF No. 18, PageID.317). This calculation gave him credit for his payments other than the time he was in in-school deferment. Skidmore admits he was in in-school deferment from "Fall of 2003 until the Spring of 2006," and he did not enter repayment until 2007. (Am. Compl., ECF No. 18, PageID.293); Loan Det., Ex. 2. Thus, he does not have 300 qualifying payments.

While Skidmore claims it was a violation of the APA not to count his time in "academic deferment" towards his qualifying payments under § 1098e(b)(7), his argument is without merit. (Am. Compl., ECF No. 18, PageID.304). "The APA authorizes suit by 'a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (citing 5 U.S.C. § 702). Whether addressing an affirmative act or the failure to act, "the only agency action that can be compelled under the APA is [discrete] action [that is] legally required." *Id.* at 63.

Skidmore fails to identify any basis that legally required Defendants to count his time in in-school deferment as a qualifying circumstance under § 1098e(b)(7)(B). First, the statute itself does not identify in-school deferment as a qualifying circumstance. Nor is there a regulation that requires in-school deferment

to count towards loan forgiveness. Second, Congress specifically included deferment due to economic hardship under § 1085(o) as a qualifying circumstance. This demonstrates that Congress did not intend to make deferment on other bases, like in-school deferment, a qualifying circumstance. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 283 (6th Cir. 2010) ("[T]he germane maxim *expressio unius est exclusio alterius* ('the expression of one thing is the exclusion of others') justifies the inference that activities not mentioned were excluded by deliberate choice, not inadvertence.") (cleaned up).

Skidmore also claims that time spent in "academic deferment" should qualify because he paid $0 during those months which he claims can constitute a payment under 20 U.S.C. § 1098e(b)(1). (Am. Compl., ECF No. 18, PageID.317–318). Again, Skidmore offers no legal duty that required Defendants to treat his in-school deferment as a qualifying circumstance under § 1098(b)(7)(B). Section 1098e(b)(1) is the income-based repayment program that permits a borrower with a "partial financial hardship" to have their monthly loan payment reduced under a specified formula, which could result in a $0 payment. *See* 34 C.F.R. § 682.215.

Skidmore's argument fails because he is seeking credit for time spent in *deferment* as though it were the same as being in *repayment*, which it is not. *See* Black's Law Dictionary (12th ed. 2024) (repayment n. (15c) 1. The paying back of money or its equivalent, usu. after a loan <repayment of a debt>. 2. An amount of

money paid regularly until a debt has been satisfied); (deferment n. (17c) 1. The act of delaying; postponement.). As set forth above, Congress included only deferment based on economic hardship under 20 U.S.C. § 1085(o) as a qualifying circumstance—not in-school deferment. *See Cardona*, 102 F.4th at 348 ("[D]eferment for reasons other than economic hardship…do not count toward" Income Driven Repayment plans.). Skidmore does not point to any law that legally required the Department to count his time in in-school deferment as though he had qualified for a partial financial hardship with a $0 monthly repayment amount.

Skidmore fails to state a claim that he is currently entitled to loan forgiveness under 20 U.S.C. § 1098e(b)(7) because he does not allege facts to show he made the required number of qualifying payments for the required length of time. Accordingly, Counts 2, 4, 9, and 10 alleging violation of § 1098e(b)(7) and/or failure to find he is entitled to loan forgiveness should be dismissed.

**C. Skidmore fails to state a claim in Count 5.**

Skidmore fails to state a claim under the Fair Credit Reporting Act (FCRA) because as set forth above, he failed to allege facts to show that any reporting of his student loan debt was inaccurate. Even if he did, the FCRA "expressly precludes consumers from enforcing the requirement that furnishers, under § 1681s–2(a), initially provide complete and accurate consumer information to a

[credit reporting agency].” *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012). Thus, any claim for inaccurate reporting must be dismissed.

Skidmore’s claim for failure to investigate should also be dismissed because he does not allege that he disputed reporting of his student loan accounts with a credit reporting agency who then provided notice of the dispute to the Department. *Id*. at 615–16 (a consumer can bring a claim “only after a furnisher has received proper notice of a dispute from a CRA.”). Nor can Skidmore show that his dispute was not frivolous where he claims he should have received credit towards forgiveness to which he was clearly not entitled. *Id*. at 616 (“CRAs need not forward frivolous disputes along to furnishers.”). Because Skidmore fails to allege facts to support a claim under the FCRA, Defendants are entitled to dismissal.

**D. Skidmore fails to state a claim in Counts 7 and 8.**

**1. Skidmore does not state a Privacy Act violation.**

Skidmore fails to allege facts entitling him to relief under the Privacy Act. As an initial matter, inasmuch as Skidmore seeks relief under the Privacy Act based on an alleged unlawful disclosure of his information, his claim fails because he does not plead any actual damages caused by the disclosure. *See Doe v. Chao*, 540 U.S. 614, 617, 620 (2004) (upholding finding that plaintiff’s Privacy Act claim for unlawful disclosure failed where he did not have actual damages only emotional distress); *see also F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012) (actual

damages against the federal government under the Privacy Act are "limited to proven pecuniary or economic harm" not emotional distress damages).

Skidmore's claim for failure to produce documents under 5 U.S.C. § 552a(d)(1) of the Privacy Act should also be dismissed. Under § 552a(d)(1), a person is entitled to access to his own records or information pertaining to him in a system of records. *See Manuel v. Veterans Admin. Hosp*., 857 F.2d 1112, 1116 (6th Cir. 1988) ("The access provision of § 552a(d)(1) is, therefore, confined to records or information within a system of records."). A "record" is "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4). A system of records is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

Skidmore requests "[a]ny and all records used by Dept. of Education staff or contractors in reviewing Mr. Daniel Grant Skidmore's…qualification for an IDR Account Adjustment to his student loans." (Priv. Act., Ex. 4). He then identifies several documents that are included like information that was "used or referenced" or "used in determining" calculations related to Skidmore's loans. *Id*. Documents that do not pertain to Skidmore but are instead guidance relied on to determine what number of qualifying payments he was entitled to under the putative one-time

adjustment are not "records" for purposes of the Privacy Act. Statutes, regulations, manuals, guidance, handbooks, etc., apply generally and are not "about an individual" or "retrieved" by the name of an individual. *See* 5 U.S.C. § 552a(a)(4), (5). Thus, general guidance documents are not records or a system of records covered by the Privacy Act. *See Manuel*, 857 F.2d at 1117 ("[R]ecords not kept within a system of records are not protected under the Privacy Act."). Accordingly, Skidmore's request for "any and all records" the Department relied on to determine the number of payments in his putative one-time adjustment are not subject to the Privacy Act and his claim should be dismissed.

To the extent Skidmore's request includes his own payment history to which the guidance was applied, he admits that at least some of the records requested have been produced. (Am. Compl., ECF No. 18, PageID.326). Because Skidmore does not allege whether the records he is still awaiting include records personal to him or just the general records discussed above that are outside the scope of the Privacy Act, he fails to state a claim that he is entitled to relief. Further, he has not provided the required documentation to permit disclosure. *See* 34 C.F.R. § 5b.5.

**2. Skidmore does not state a FOIA violation.**

Skidmore's claim under FOIA also fails because he did not exhaust administrative remedies before filing suit. "Exhaustion of administrative remedies is a threshold requirement to a FOIA claim." *Auto All. Int'l, Inc. v. U.S. Customs*

*Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005). "A party is deemed to have actually exhausted all administrative remedies when he or she files a proper request with the appropriate agency and appeals any adverse determinations administratively." *Fields v. I.R.S.*, No. 12-14753, 2013 WL 3353921, at *4 (E.D. Mich. July 3, 2013). A party constructively exhausts "when the agency fails to comply with the applicable time limit provisions of the Act." *Id*.

Skidmore has not actually exhausted because the Department has not issued an adverse determination. Rather, the Department timely responded, as Skidmore concedes, that it would take six months or more to respond to his request—it did not deny his request. (Am. Compl., ECF No. 18, PageID.327). Absent an adverse determination, Skidmore could not appeal and did not actually exhaust his administrative remedies. *See* 34 C.F.R. § 5.40.

Skidmore has not constructively exhausted because the Department has not failed to comply with applicable time limits. "Constructive exhaustion in the FOIA is a privilege granted only to individuals whose requests for records have essentially been ignored by the agency." *Nat'l Sec. Couns. v. C.I.A.*, 931 F. Supp. 2d 77, 97 (D.D.C. 2013). Skidmore requested "all definitions, rules, regulations, policies, guidelines, manuals, instructions, flowcharts, processes and other documentation used to guide DOE personnel and/or contractors in determining qualification for IDR Account Adjustment, payment counting, determinations of

payment plan status, and how DoE defines 'currently enrolled in the Pay As You Earn (PAYE) repayment plan.'" (FOIA, Ex. 3). The Department did not ignore the request and timely responded. (Am. Compl., ECF NO. 18, PageID.327).

However, Skidmore's broad request to produce any written documentation used as a guide in any of the situations he identifies is exceptionally broad and justified the estimated production time of 6 or more months. *See* 5 U.S.C. § 552(6)(B); 34 C.F.R. § 5.21(e). This is especially true where the Department is undergoing a 50% reduction in force. *See* https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force, (last visited May 29, 2025). Thus, Skidmore's claim should be dismissed for failure to exhaust. *Iskander v. F.B.I.*, No. 12-02653, 2013 WL 1572439, at *6–7 (N.D. Ohio Apr. 12, 2013) (finding the "Plaintiff's conclusory statements [that he exhausted] are not sufficient to establish constructive exhaustion of his administrative remedies" without further factual allegations); *Ocon-Fierro v. Drug Enf't Admin.*, No. 10-1228, 2013 WL 869911, at *7 (W.D. Mich. Feb. 15, 2013), report and recommendation adopted, 2013 WL 868325 (W.D. Mich. Mar. 7, 2013), aff'd (Jan. 24, 2014) (finding the "plaintiff did not constructively exhaust" where the agency had exceptional circumstances based on the complexity of the request).

To state a claim under FOIA, Skidmore must allege facts showing that the Department has (1) "improperly"; (2) "withheld"; (3) "agency records." *Kissinger*

*v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Even if Skidmore exhausted his administrative remedies, nearly all of his request, if not all, is outside the scope of FOIA. Congress requires agencies to make its general guidance publicly available through either the Federal Register or in electronic format. *See* 5 U.S.C. § 552(a)(1), (2). A FOIA request may not include these publicly available documents that have been disclosed by the agency. *See* 5 U.S.C. § 552(a)(3)(A); *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 152 (1989) (The agency need not disclose documents under FOIA where the request seeks "materials [that] have been previously published or made available by the agency."). Thus, the Department did not wrongfully withhold documents requested by Skidmore that it has already made publicly available.

Further, Skidmore's FOIA request asking the Department how it defines "currently enrolled" in a PAYE repayment plan is really an interrogatory which is outside the scope of FOIA. "Under FOIA an individual may only obtain access to records 'written or transcribed to perpetuate knowledge or events.'" *Lamb v. I.R.S.*, 871 F. Supp. 301, 304 (E.D. Mich. 1994) (citations omitted). "FOIA neither requires an agency to answer questions disguised as a FOIA request, or to create documents or opinions in response to an individual's request for information." *Id.* (citations omitted). Skidmore's request for a statement on how the Department defines "currently enrolled" in the PAYE plan should be dismissed as beyond the

scope. *See* 34 C.F.R. § 5.12 ("In response to a FOIA request, the Department produces only those agency records that are not already publicly available…[it] does not create new agency records…by, for example, extrapolating information from existing agency records.").

## CONCLUSION

For the above reasons, Defendants respectfully request the Court grant their motion to dismiss this action.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

By: /s/ Jennifer L. Newby
Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendant
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

Dated: June 3, 2025

## CERTIFICATION OF SERVICE

I hereby certify that on June 3, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system. A copy was also sent via U.S. mail and electronic mail to:

Daniel Skidmore
1053 Academy Dr.
Rochester Hills, Michigan 48307
daniel.g.skidmore@gmail.com

*/s/ Jennifer L. Newby*
JENNIFER L. NEWBY (P68891)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov