UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
EDUCATION et al.,

     Defendants.

Case No. 25-10084
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [19]**

---

Despite some financial hardships, Daniel Skidmore claims he always prioritized paying his student loans for the past twenty-seven years. (ECF No. 18.) But as he now faces what he calls financial peril, he seeks student loan forgiveness. He spent "approximately 25–30 hours on hold and on calls" with the United States Department of Education and his loan servicer trying to receive clarification on his loan balance and assistance with payments. (*Id.* at PageID.288.) He sent Freedom of Information (FOIA) and Privacy Act requests, emails, and letters, but has not been able to secure needed information or to reach a resolution. (*Id.*) All of this, he says, left him with "no alternative but to file this suit" against the Department of Education and Secretary Linda McMahon. (*Id.*) Proceeding *pro se*, he claims Defendants breached his student loan agreements and violated the Administrative Procedure Act, the student loan forgiveness statute (20 U.S.C. § 1098e), the Fair Credit Reporting Act (15 U.S.C. § 1681s-2), the Privacy Act (5 U.S.C. § 552a), and the

Freedom of Information Act (5 U.S.C. § 552). He seeks equitable, statutory, and monetary relief. (*See* ECF No. 18.)

Defendants filed a motion to dismiss Counts 1 and 3 of the amended complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and the remaining counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 19.) The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f)(2).

## I.

Defendants challenge the Court's subject matter jurisdiction over the breach of contract claims in Counts 1 and 3 of the amended complaint. (ECF No. 19, PageID.340.) More specifically, Defendants contend they are immune from such claims in federal district court. So this is where the Court begins. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Gingles v. United States Dep't of Hous. & Urb. Dev.*, No. 22-11530, 2022 WL 16951643, at *3 (E.D. Mich. Nov. 15, 2022) (citing *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997)). Such immunity also "extends to agencies of the United States." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013)). Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Gao v. Jenifer*, 185 F.3d 548, 554 (6th Cir. 1999) (citations omitted). "A waiver of the

Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Gingles*, 2022 WL 16951643 at *3 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Two related statutes—The Tucker Act and Little Tucker Act—provide a limited waiver of sovereign immunity for contract claims against the United States but limit this waiver to particular courts. 28 U.S.C. § 1491. Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over contract claims seeking more than $10,000, while under the Little Tucker Act, federal district courts have concurrent jurisdiction with the Court of Federal Claims over contract claims seeking $10,000 or less. 28 U.S.C. § 1346(a)(2).

The government invokes the Tucker Act, asserting that Counts 1 and 3 of Skidmore's amended complaint may only proceed in the United States Court of Federal Claims because they are contract disputes exceeding $10,000. *See* 28 U.S.C. § 1491; (ECF No. 19, PageID.355.) Skidmore disagrees with the government's characterization of his claims. (ECF No. 23, PageID.419, 421.) But, as discussed below, the government has the better argument.

In Count 1 of his amended complaint, Skidmore asserts that his student loan agreement with the Department of Education and Secretary McMahon is unenforceable. (ECF No. 18, PageID.297.) He says "payments and interest calculations" and adjustments have been applied to his loans incorrectly and that his "balance and/or interest" has been "consistently inflated" due to improper calculations, record keeping, and other errors. (*Id.*) All of this, he argues, makes the

agreements "unenforceable, void, indefinite, and utterly unconscionable." (*Id.* at PageID.298.) He seeks a court order, declaratory judgment, writ, or injunction specifying that the agreements are unenforceable and asks that the government refund him for previous payments. (*Id.* at PageID.299.)

Likewise, in Count 3, Skidmore claims that to the extent enforceable loan agreements exist, Defendants breached them by failing to abide by the implied duty of good faith and fair dealing. (*Id.* at PageID.307.) They did this, he alleges, by allowing loan servicers, and specifically the Missouri Higher Education Loan Authority (MOHELA), the servicer on Skidmore's account, to operate below industry standards and violate the law. (*Id.* at PageID.307–308, 310, 312 ("the levels of service are so bad as to constitute a material breach of contract as a matter of law").) For example, Skidmore alleges that MOHELA has the "longest wait times in the industry," the "highest level of consumer complaints filed among the major student loan servicing companies," "failed to send billing statements," and "incorrectly calculated payments . . . ." (*Id.* at PageID.310.)

Despite Skidmore's recent effort to recast these claims as something else, they are clearly contract claims both in nature and in name. (*See, e.g.*, ECF No. 18, PageID.297, 306 (titling Count 1, "Unenforceable Agreement" and Count 3, "Breach of Contract").) So the Court agrees with the government that these are contract disputes exceeding $10,000, such that these claims may only proceed in the United States Court of Federal Claims per The Tucker Act, 28 U.S.C. § 1491. (ECF No. 19, PageID.355.)

Skidmore resists this conclusion by invoking the Higher Education Act, 20 U.S.C. § 1082(a), which contains a waiver of sovereign immunity. (ECF No. 23, PageID.418.) The provision says, in relevant part, the Secretary of Education may "sue or be sued . . . in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy . . .; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control . . . ." § 1082(a)(2).

By its terms, however, § 1082(a)(2) is specific to claims "arising under" the HEA and is not a sovereign immunity waiver as to all claims involving student loans. *See Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 989 (N.D. Ill. 2024); *Scoles v. Spellings*, No. 07-1007, 2008 U.S. Dist. LEXIS 70647, at *6 (W.D. Okla. Sep. 18, 2008) (concluding that the HEA could not waive sovereign immunity for plaintiff's student loan breach of contract claims because "plaintiff does not seek to enforce the provisions" of the HEA).

And even if the HEA applied, it prohibits claims seeking an "attachment, injunction, garnishment or similar process . . . [a]gainst the Secretary or property under the Secretary's control . . . ." § 1082(a)(2). In other words, § 1082(a)(2) expressly prohibits injunctive relief against the Department of Education in regard to its administration of the student loan program. True, Skidmore labels his requested relief as "declaratory." (ECF No. 23, PageID.422 ("Mr. Skidmore seeks a 'declaratory judgement' [sic] that there is no obligation" to pay his loans. (citing ECF

No. 18, PageID.299)).) But the Court must look past labels and analyzes the practical effect of the requested relief. *Carr v. DeVos*, 369 F. Supp. 3d 554, 559–60 (S.D.N.Y. 2019) ("The Court concludes that the limited waiver of sovereign immunity does not allow declaratory relief that functions as injunctive relief by another name."). And other courts have understood requests for student loan adjustments, like Skidmore's, to be seeking injunctive relief barred by HEA's prohibition. *See Witz*, 752 F. Supp. 3d at 989 (finding HEA did not waive sovereign immunity for claim requesting adjustment of student loans because such relief would function as an injunction); *see also Smith v. Sec'y of U.S. Dep't of Educ.*, No. 23-12823, 2024 WL 4231572, at *3 (E.D. Mich. Sept. 18, 2024) ("Asking for the loan to be discharged or reformed to strike Smith as obligor functions as injunctive relief against the government that is barred by sovereign immunity."). Here, the practical effect of this Court prohibiting the federal government from collecting Skidmore's student loan payments is an injunction and thus, the HEA does not provide a waiver of sovereign immunity. Similarly, "[f]ederal courts appear to be unanimous in their holdings that the Tucker Act impliedly forbids a federal district court from granting equitable relief against the government in contract claims." *Karara v. USDE*, No. 08-00614, 2008 U.S. Dist. LEXIS 117932, at *10 (D. Colo. Oct. 15, 2008) (collecting cases).

In sum, this Court does not have subject matter jurisdiction over Counts 1 and 3 because those claims are barred by sovereign immunity. To the extent the Tucker Act provides a waiver of such immunity for contract claims seeking monetary relief, those claims must be brought in the Federal Court of Claims. But neither the Tucker

Act nor the HEA provide a waiver of sovereign immunity for Skidmore's request for injunctive relief. Thus, those claims are DISMISSED without prejudice and Skidmore may refile them in the Federal Court of Claims.

## II.

Defendants challenge the remaining counts (2, 4, 5, 7, 8, 9, and 10)[1] for failure to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). (ECF No. 19.)

In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to Skidmore and determines whether his amended "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

And since Skidmore is *pro se*, the Court is required to construe his filings liberally. *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of *pro se*

---

[1] The parties agree that Count 6 should be dismissed. (ECF No. 23, PageID.424.)

litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). But the Court's leniency is "not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Basic pleading requirements "apply to self-represented and counseled plaintiffs alike." *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004).

The Court addresses each count of the amended complaint in turn.

**A.**

"To defray some borrowers' costs of repaying [their] student loans, Congress has approved several loan-forgiveness programs, including income-driven repayment ("IDR") plans. . . ." *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 348 (6th Cir. 2024). These are "repayment plans that base the borrower's monthly payment amount on the borrower's income and family size." 34 C.F.R. § 685.209(a). One type of IDR plan is an Income-Based Repayment plan (IBR). *Id.* Skidmore claims he is eligible for loan forgiveness based on his enrollment in an IDR plan. The government says Skidmore has failed to plausibly plead his entitlement to forgiveness under the income-based repayment statute, 20 U.S.C. § 1098e. (ECF No. 18, PageID.315.)

To answer this question, the Court begins with the statutory text. *Ohio Telecom Ass'n v. Fed. Commc'ns Comm'n*, 150 F.4th 694, 707 (6th Cir. 2025). It provides, in relevant part:

(b) Income-Based Repayment Program Authorized

Notwithstanding any other provision of this chapter, the Secretary shall carry out a program under which—

(7) the Secretary shall repay or cancel any outstanding balance of principal and interest due on all loans made under part B or D . . . to a borrower who—

(A) at any time, elected to participate in income-based repayment under paragraph (1); and

(B) for a period of time prescribed by the Secretary, not to exceed 25 years, meets 1 or more of the following requirements—

> (i) has made reduced monthly payments under paragraph (1) or paragraph (6);

> (ii) has made monthly payments [of a certain amount] based on a 10-year repayment period, when the borrower first made the election described in this subsection;

> (iii) has made payments of not less than the payments required under a standard repayment plan  . . . with a repayment period of 10 years;

> (iv) has made payments under an income-contingent repayment plan under section 1087e(d)(1)(D) of this title . . . ; or

> (v) has been in deferment due to an economic hardship described in section 1085(o) of this title;

20 U.S.C. § 1098e(b)(7)(B).

Skidmore's first theory for why he should receive loan forgiveness is as follows. He says he satisfies subsection (A) because he was previously on an income-driven repayment plan, and the government does not contest this. (ECF No. 18, PageID.315–316.) And because, at some point during the last 25 years, Skidmore was on an income-based repayment plan, he interprets subsection (B) as entitling him to loan forgiveness because more than 25 years have passed from when he started paying on the loan. (*Id.* at PageID.287.) In his reading, the Department "'shall' forgive student loans where a person has made a payment under one or more of the many income-

based repayment plans available within 25 years." (*Id.* at PageID.287.) Because he started paying in 1998—over 27 years ago—Skidmore contends he has satisfied this provision. (*Id.* at PageID.287.)

The government understands subsection (B) differently. According to the government, the plain language of subsection (B) does not simply authorize loan forgiveness after 25 years from the date that payments started—it instead requires "25 years *of making qualified payments*." (ECF No. 19, PageID.360); *see also* § 1098e(b)(7)(B) (describing payments that "for a period of time prescribed by the Secretary, not to exceed 25 years, *meets 1 or more of the following requirements*) (emphasis added). According to the Department's regulations, "the borrower receives forgiveness of the remaining balance of the borrower's loan after the borrower has satisfied 300 monthly payments or the equivalent . . . over a period of at least 25 years;" *See* 34 C.F.R. § 685.209(k); *see also* § 682.215(f).

The Court finds the statute to be unambiguous on this point. As the Sixth Circuit explained:

> Under IDR plans, the Department of Education will forgive a student-loan debt after the borrower makes the number of monthly payments required under one of four plans selected based on the borrower's income and family size. IDR plans have a forgiveness timeline of 20 or 25 years, and up to 3 years of deferment for economic hardship may count toward the monthly payment requirement.

*Cardona*, 102 F.4th at 348. Said another way, it is the number of qualifying payments made *after* 25 years that matters—not simply the number of years a borrower has been enrolled in an IDR program. (ECF No. 19, PageID.359 ("The statute unambiguously requires the borrower to both have been in an income-based

10

repayment plan for any length of time and to have 'made payments' or been in deferment for economic hardship for a period not exceeding 25 years.").)

According to the government, Skidmore has made only 276 of the required 300 payments[2] and thus does not qualify to have his loans forgiven. (*Id.* at PageID.360.) The Court agrees that the statute does not require loan forgiveness merely after 25 years since payment started, so his claims fail on this theory.

So Skidmore moves to his second theory for why he should receive loan forgiveness. He says he has enough qualifying payments if the Department counts years of academic deferment as economic hardship under § 1098e(b)(7)(B)(v). Under this section, a student loan borrower who "has been in deferment due to an economic hardship described in section 1085(o) of this title" can count their monthly "payment" of zero as a qualifying payment. § 1098e(b)(7)(B)(v). *See* 34 CFR § 685.209(k)(4)(i) ("For all IDR plans, a borrower receives a month of credit toward forgiveness by— Making a payment under an IDR plan or having a monthly payment obligation of $0"); *Cardona*, 102 F.4th at 348 ("Because these plans are based on the borrower's income, some low-income borrowers may have a required monthly payment as low as $0.").

---

[2] The government reaches this number by including a "one-time adjustment" pursuant to the SAVE rule, 34 C.F.R. § 685.209, a regulation that "allow[ed] many borrowers to get credit for payments toward forgiveness that otherwise would not have counted." (ECF No. 19, PageID.349–351.) The SAVE rule was scheduled to take effect in July 2024, but has since been enjoined. (*Id.* (citing *Missouri v. Trump*, 128 F.4th 979, 998 (8th Cir. 2025)).) So the 276 payments account for this one-time adjustment from the SAVE rule, although the Department is unsure if "Skidmore [will] retai[n] credit for the payments . . . ."

Skidmore contends his time in graduate school (when his student loans were in deferment) was a time of economic hardship that should qualify under § 1098e(b)(7)(B)(v). (ECF No. 23, PageID.427–428 ("[A] person that is enrolled full time in school for 9–10 months of the year cannot, as a general rule, earn enough . . . to rise above the poverty line. Congress—in full knowledge of all of this—did not exclude a person in academic deferment from the definition of partial financial hardship.").)

This theory does not work either. For one, the statute does not list academic deferment as a qualifying circumstance. § 1098e(b)(7)(B)(i–v). For another, says the government, "Skidmore does not allege that during the time he was in academic deferment, he applied for and received a $0 payment due to partial financial hardship." (ECF No. 24, PageID.483) (citing 34 CFR § 682.215(e)). His mere argument that he could have done so does not allow him to claim qualifying payments under § 1098e(b)(7)(B). With income-driven repayment plans, "deferment for reasons other than economic hardship" do not count as qualifying payments. *Cardona*, 102 F.4th at 348. Again, even if Skidmore could have qualified for economic hardship, he does not allege that he did qualify, apply, and receive such deferment. And the statute provides for loan forgiveness only when the borrower "has made" payments under sections (i)-(iv) or "has been" in deferment due to an economic hardship under section (v). 20 U.S.C. § 1098e(b)(7)(B).

Thus, Skidmore has not stated a plausible claim for loan forgiveness under § 1098e(b)(7)(B).

**B.**

In Count 2 of his complaint, Skidmore alleges that the Department of Education and Secretary McMahon violated the Administrative Procedure Act (APA). (ECF No. 18, PageID.299–300.) He attacks the Department's decision to not forgive his loans, its policy on loan forgiveness, and its failure to comply with FOIA and Privacy Act requirements. (*Id.* at PageID.301.)

The APA permits review of agency action. 5 U.S.C. § 706(2). The Court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at § 706(2)(A). This is a "deferential" standard wherein the Court "simply ensures that the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *Chamber of Commerce of United States v. SEC*, 115 F.4th 740, 749 (6th Cir 2024) (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Oakbrook Land Holdings, LLC v. Comm'r*, 28 F.4th 700, 720 (6th Cir. 2022). But if an agency failed to comply with the APA's procedural requirements, the action must be set aside. 5 U.S.C. § 706(2)(D). And agency action is "not in accordance with the law" when "it is in conflict with the language of the statute relied upon by the agency." *All. for Cmty. Media v. F.C.C.*, 529 F.3d 763, 786 (6th Cir. 2008) (quoting *City of Cleveland v. Ohio,* 508 F.3d 827, 838 (6th Cir. 2007)).

Skidmore's argument that the Department of Education acted arbitrarily or capriciously when it denied him loan forgiveness is premised entirely on his misreading of the relevant loan forgiveness statute, § 1098e(b)(7)(B). The Department's interpretation that Skidmore does not yet have enough qualifying payments is supported by the plain language of the text and is therefore not arbitrary and capricious. Skidmore points to no other facts that plausibly allege the Department's decision not to forgive his student loans violated the APA.

Nor can Skidmore use the APA as a backdoor for other claims. While the APA provides a waiver of sovereign immunity to challenge certain agency actions, it does not permit suit when another statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. As already discussed, the Tucker Act precludes Skidmore's contract claims in this Court. So these claims cannot be reasserted under the APA. *See Gingles*, 2022 WL 16951643, at *3 (concluding that Section 702 of the APA did not authorize the court to hear contract claim against government in light of Tucker Act).

The same goes for Skidmore's claims under the Freedom of Information Act and the Privacy Act. (ECF No. 18, PageID.325, 327). Again, the APA's sovereign immunity waiver is limited to circumstances "for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. Thus, the Court will address Skidmore's FOIA and Privacy Act claims under those statutes and not the APA. *See Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) (rejecting APA claim for FOIA violation because FOIA's statutory scheme provides adequate remedy).

In sum, Skidmore fails to state a plausible claim under the APA, so Count 2 is dismissed.

## C.

In Count 5, Skidmore alleges the Department of Education and Secretary McMahon failed to comply with the Fair Credit Report Act, 15 U.S.C. § 1681s-2, in several ways. (ECF No. 18, PageID.322–324.)[3] First, Skidmore alleges the Department violated § 1681s-2(a)(1)(B) when it reported inaccurate information about his student loan debt to credit reporting agencies, despite Skidmore notifying them that the information was inaccurate. (*Id.* at PageID.322.) Skidmore further alleges that the Department had a duty to correct and update incorrect/incomplete information and failed to do so. (*Id.*) And he claims the Department violated § 1681s-2(a)(8)(E) by not conducting an investigation of the disputed debt and failing to notify consumer reporting agencies of the dispute. (*Id.*) He asserts that these violations were willful under § 1681n. (*Id.* at PageID.323.)

Starting with the inaccurate information regarding his debt, Skidmore says the Department violated the FCRA by reporting that he had a debt in the first place. (*Id.* at PageID.322 ("Mr. Skidmore was liable for debt that is unevidenced, inaccurate, and required to be forgiven under federal law.").) But, for the reasons already discussed, it was not inaccurate to report his student loan debt or that it was not

---

[3] Skidmore concedes that paragraph 211 of his pleading regarding § 1681s-2(a)(1)(A) can be dismissed. (ECF No. 23, PageID.439.)

forgiven. The same is true for the claim that the Department had a duty to correct incorrect/incomplete information.

On the duty to investigate, Skidmore acknowledges that he did not dispute his student loan debt with a consumer reporting agency until July 1, 2025—well after the amended complaint and Defendants' motion to dismiss were filed. (ECF No. 23, PageID.440.) The Sixth Circuit "has repeatedly held that consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s–2(b)." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019). Under this chronology alone, Skidmore's amended complaint cannot plausibly allege a failure to investigate claim. It is not surprising that after two motions to dismiss pointing out this deficiency, Skidmore finally submitted a dispute to a consumer reporting agency. But it was too late. This also precludes his claim that the Department did not notify consumer reporting agencies of the dispute. As the government did not receive notice of the dispute, its duty to notify the CRAs was not triggered. (ECF No. 24, PageID.487.)

Skidmore does not state a plausible claim for relief under the FCRA, so Count 5 is dismissed.

## D.

In Count 7, Skidmore alleges that the Department of Education and Secretary McMahon violated the Privacy Act. (ECF No. 18, PageID.325.)

Such a violation can occur in a few ways. For instance, the government can unlawfully disclose one's personal information. Skidmore acknowledges that he

16

cannot pursue such a claim here because he has not pled any actual damages caused by the disclosure. *See Doe v. Chao*, 540 U.S. 614, 617, 620 (2004) (upholding finding that plaintiff's Privacy Act claim for unlawful disclosure failed where he alleged only emotional distress, not actual damages).

Alternatively, the Act can be violated by the government's failure to produce certain documents. 5 U.S.C. § 552a(d)(1). Skidmore says he requested records related to his payment history, payment plan, dates of deferment or forbearance, approved or denied account adjustments, data used to determine account adjustments, and payment count status. (ECF No. 23, PageID.441.) After more than six months, he claims this request was only partially fulfilled (ECF No. 18, PageID.326.) This, says Skidmore, has impeded his ability to "understan[d] the alleged debt claimed by the Defendants" and/or "mak[e] any informed financial decisions regarding payment plan choices, prepayment of any alleged remaining obligation, or other actions to contain his spiraling financial situation." (*Id.*) Skidmore asks the Court to order Defendants to turn over those documents.

"The Privacy Act is similar to FOIA, but it provides a right of access allowing individuals to request records about themselves." *Smigelski v. Fed. Bureau of Investigation*, No. 25-01013, 2025 WL 2653819, at *3 (S.D. Ohio Sept. 16, 2025) (citing 5 U.S.C. § 552a(d)). "The individual can file a civil action to compel an agency to comply with § 552a(d)(1) if the agency refuses the individual access to his own records." *Id.* (citing *Kinman v. United States*, No. 16-00329, 2016 WL 7165986, at *3 (S.D. Ohio Dec. 7, 2016)).

17

The government contends Skidmore requested some combination of both personal records and general records (such as manuals, guidance, and handbooks) and that while personal records are covered by the Act, general records are not. (ECF No. 19, PageID.365.) Since Skidmore did not specify which outstanding records are covered by the Act, the government says the claim fails. (*Id.* at 366.)

The government's position does not provide the leniency required in interpreting a *pro se* complaint. The claim should be read as seeking Skidmore's personal records that he is entitled to under the Act. And Skidmore alleges the following records have still not been turned over:

> "[P]ayment plan" information, the "date" of payments, the "amount" of payments, the dates of any deferment or forebearance, [sic] any records related to approval or denial of account adjustment, "any file or data that was used or referenced by any person or system in determining" Mr. Skidmore's qualification for an account adjustment, any records showing accounting of Mr. Skidmore's payments made, any calculation of Mr. Skidmore's payment count status

(ECF No. 23, PageID.441.) Some, if not all, of these requests fall within the Act's definition of records.

The government's only other argument is that Skidmore "has not provided the required documentation to permit disclosure." (ECF No. 19, PageID.366; ECF No. 24, PageID.488.) It says, in a footnote, that it is "awaiting receipt of a Certification of Identity from Skidmore which he claims he sent by mail." (ECF No. 19, PageID.353.) This is insufficient to warrant dismissal of the claim. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)

(omission in original). Moreover, the government acknowledges that some records have been produced. So Skidmore provided something sufficient to permit disclosure.

Thus, the Court finds that Skidmore has sufficiently alleged a claim for a violation of the Privacy Act.

**E.**

In Count 8, Skidmore alleges that the Defendants violated FOIA by failing to provide him certain documents. (ECF No. 18, PageID.327.)

Skidmore submitted his FOIA request in November 2024. (ECF No. 23, PageID.443.) The Department "initially responded [to Skidmore's request] within 20 days stating it could potentially take six months or more to produce any documents." (ECF No. 18, PageID.327.) According to Skidmore, at the time of his amended complaint in May 2025, the Department told him it still had not started working on producing the documents. (*Id.* at PageID.328.) And as of a July 2025 filing—eight months after submitting his request—the Department still had not produced any documents. (ECF No.23, PageID.443–444.)

Once a FOIA request is made, an agency has 20 working days to decide whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). If it decides to comply, "the records shall be made promptly available to such person making such request," 5 U.S.C. § 552(a)(6)(C), except those records specifically exempt from disclosure. *See Id.* § 552(a)(3). FOIA confers jurisdiction upon district courts to "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* at § 552(a)(4)(B).

19

The government does not dispute the lack of document production. But it argues that Skidmore has failed to exhaust his administrative remedies, and thus, the FOIA claim should be dismissed. The Court disagrees.

It is true that "[a] plaintiff's failure to exhaust administrative remedies precludes a federal court from exercising subject-matter jurisdiction over the party's FOIA claims." *Iskander v. F.B.I.*, No. 12-02653, 2013 WL 1572439, at *4 (N.D. Ohio Apr. 12, 2013). But there are two types of administrative exhaustion: actual and constructive. "Actual exhaustion occurs when the agency denies all or part of a party's document requests, and Plaintiff files the appropriate appeals which are denied by the agency." *Id.* Here, the Department has put Skidmore in a bind. It has not expressly denied Skidmore's request, yet nor has it acted on it for over six months. So there is no way for Skidmore to actually exhaust.

That is where constructive exhaustion comes in. "Constructive exhaustion occurs when the agency fails to comply with the applicable time limit provisions of 5 U.S.C. § 552(a)(6)(C)." *Id.* Again, the Department has failed to act on a request seeking student loan documents pertaining to one individual borrower for over a year. Skidmore has adequately alleged sufficient inaction over a substantial period of time to rise to the level of constructive exhaustion. *See, e.g.*, *Washington v. Pub. Buildings Reform Bd.*, No. 21-00566, 2022 WL 823548, at *4 (W.D. Wash. Mar. 18, 2022) (finding the appropriate "penalty" for Agency's six-month delay was to relieve plaintiff of FOIA's administrative exhaustion requirement); *Lawrence v. United States Sba*, No. 20-11637, 2021 U.S. Dist. LEXIS 184054, at *16 (E.D. Mich. Sept. 27,

20

2021) (explaining that "[c]ases in the United States District Court for the District of Columbia interpreting [*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) (CREW)] have emphasized that the CREW court was particularly concerned with 'agency feet-dragging' and situations in which an agency places FOIA requesters in a kind of 'administrative limbo' by 'keep[ing] FOIA requests bottled up . . . for months or years on end by issuing a response that precludes a requester from pursuing both an administrative appeal and a federal lawsuit.'").

At this time, therefore, the FOIA claim will not be dismissed. *See S. Env't L. Ctr. v. Tennessee Valley Auth.*, No. 24-00110, 2026 WL 84203, at *2 (E.D. Tenn. Jan. 12, 2026) ("Because most FOIA challenges involve purely legal questions, district courts typically resolve these cases on summary judgment.").

## F.

Skidmore also seeks declaratory judgment (Count 9) and a writ of mandamus (Count 10) on his contract and loan forgiveness claims. (ECF No. 18, PageID.330–332.) But those claims have been dismissed, so there is no basis to grant such relief. Counts 9 and 10 will thus be dismissed.

## III.

Skidmore states a plausible claim for relief under the Privacy Act (Count 7) and FOIA (Count 8), so Defendants' motion to dismiss on those grounds is DENIED. But Skidmore does not state a plausible claim for relief under any of the remaining counts, so Defendants' motion to dismiss as to Counts 1, 2, 3, 4, 5, 6, 9, and 10 is

21

GRANTED. Skidmore may refile his claims in Counts 1 and 3 with the Court of Claims.

IT IS SO ORDERED.

Dated: March 5, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE