UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL SKIDMORE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION et al.,<br><br>Defendants. | Case No. 25-10084<br>Honorable Laurie J. Michelson |

**ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL [55]**

The Eastern District of Michigan Chapter of the Federal Bar Association has over 25 committees. *See* https://fbamich.org/about-fba/committees. This includes a Law Clerk Committee that "seeks to bring current and former federal law clerks together for both networking and practice-related purposes." *Id.* The undersigned and lead counsel for the defense, Assistant U.S. Attorney Jennifer Newby, are both long-serving, active members of the committee. As such, they attend, and participate in, similar functions and activities. In his motion to recuse this Court, *pro se* litigant Daniel Skidmore contends that the undersigned's professional associations with Newby would "cause a reasonable observer to seriously question the appearance of impartiality." (ECF No. 56, PageID.734.) But he does so by mischaracterizing or misunderstanding the nature of the relationship and posturing it into something it is not—all to remove a judge who has not granted him the relief he desires.

Because there "is as much [an] obligation upon a judge not to recuse [herself] where there is no occasion as there is for [her] to do so when there is," *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988), the motion will be DENIED without the need for the hearing presently scheduled for November 23, 2026. *See* E.D. Mich. LR 7.1(f). Indeed, the motion is thoroughly and extensively briefed, and the parties have clearly presented their positions.[1]

**I.**

**A.**

Motions for recusal are governed by 28 U.S.C. § 144 and 28 U.S.C. § 455. Though § 455 "substantially overlaps and subsumes" § 144 . . . ." *Jane Doe v. Cin-Lan, Inc.*, No. 08-12719, 2010 WL 419988, at *1 (E.D. Mich. Feb. 1, 2010) (citing *Easley v. Univ. of Mich. Bd. of Regents,* 853 F.2d 1351, 1356 (6th Cir. 1988)). Skidmore filed his motion under both § 455(a) and § 144, so the Court addresses these claims together.

Under § 455, a judge must recuse when her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This does not mean that a judge must recuse whenever a frustrated litigant questions her partiality. The "conduct must be so extreme . . . that it displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Liggins*, 76 F.4th 500, 506 (6th Cir. 2023) (quotation omitted).

---

[1] The Court will address the remaining motions (ECF Nos. 59, 60, 61) at the hearing on November 23, 2026.

Section 144 requires a judge to "proceed no further" when a party "files a timely and sufficient affidavit" showing that the judge "has a personal bias or prejudice either against him" or for his opponent. 28 U.S.C. § 144. The alleged bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

"Both [§§ 144 and 455] require a showing of 'personal bias or prejudice' to support mandatory recusal." *Reed-Bey v. Pramstaller*, No. 06-10934, 2011 WL 37964, at *2 (E.D. Mich. Jan. 5, 2011) (quoting *Taylor Acquisitions, L.L.C. v. City of Taylor,* No. 07–2242, 313 Fed. App'x. 826, 2009 WL 415993, at *11 (6th Cir. Feb.19, 2009)). Importantly, recusal is not based on the moving party's subjective view. *Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016). Rather, the standard is an objective one, requiring recusal only if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id*. at 616 (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)); *see also United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) ("[T]he judge need not recuse [herself] based on the 'subjective view of a party' no matter how strongly that view is held."). The moving party bears the burden to justify disqualification. *Id.*; *see also Consol. Rail Corp. v. Yashinsky,* 170 F.3d 591, 597 (6th Cir. 1999); *see also Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (reiterating that "a judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.'").

**B.**

Skidmore is correct that the Court has been active in her District's Federal Bar Association. This has included serving as a committee chair, executive board member, officer, and eventually the President a decade and a half ago. In those capacities the undersigned has frequently interacted with lawyers and law firms throughout the District irrespective of practice area or client representation. As a judicial officer, the Court continues to be involved in professional and bar activities, including planning programs, attending events, moderating and serving on panels, and chairing committees. Again, that is done with lawyers from all walks of the profession—including lawyers for the government, like Newby. Those activities are completely separate from the Court's role in presiding over cases.

To his credit, Skidmore acknowledges that not every judge-attorney relationship requires recusal. But he believes this Court's relationship with Newby crosses the line. His focus is the Court's sustained association with the Chapter's Federal Law Clerk Committee. (ECF No. 56, PageID.71, 744–751.) It is true, as suggested in Skidmore's affidavit, that the undersigned, a former federal law clerk, founded the Committee, served for many years as a Co-Chair, and is now a member and the judicial liaison. Newby, also a former federal law clerk, is also a long serving member. The Committee seeks to support federal law clerks' professional development. It puts on events aimed at current, former, and prospective law clerks, such as a resume review workshop and panel discussions on being a federal law clerk. The Committee has also organized several "Judicial Family Reunion" social events to

enable judges and law clerks to reunite and catch-up. Skidmore has obtained Legal News articles and FBA Newsletter stories in which the undersigned referred to the law clerk/judge relationship as akin to a family relationship. (ECF No. 56-1.) Skidmore draws unreasonable inferences and meaning from this professional networking. He points to the fact that Newby also often attended the same events and eventually became President of the Chapter, and that the undersigned does not have children to conclude that "[a] reasonable person would perceive that Judge Michelson feels a strong desire to support Newby as a member of her 'family.'" (ECF No. 56, PageID.716.)

This is not an accurate portrayal and not a basis for recusal. The interactions between the Court and Newby are purely professional. "Skidmore's misguided belief that Judge Michelson and [Newby] have a 'family-like friendship' was denied by [Newby] who disclosed a 'professional friendship' and is wholly unsupported." (ECF No. 57, PageID.810–802.) These professional interactions play no role in (and indeed, have no relevance to), the Court's decision-making. As one court aptly explained:

> [Defendant's motion to recuse] overlooks that "the practice of law is a profession, and the judicial office is one specialized manifestation of that profession." As a result, judges frequently serve on committees, attend functions, and socialize with members of the bar, but the recusal rules do not require judges to check those relationships at the courthouse door. Indeed, if such relationships "were to require recusal . . . , I daresay recusal would be required in so many . . . cases because of my acquaintance with an attorney that I—and probably most other judges—would be unable to function in our jobs."
>
> Simply put, a "judge must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation," but such associations do not require recusal.

*Am. Dairy Queen Corp. v. Blume*, No. 11-358, 2012 U.S. Dist. LEXIS 40777, *3–4, 2012 WL 1005015 (D. Minn. Mar. 26, 2012). Likewise here, no reasonable observer would question the Court's impartiality based on the common, professional interactions Skidmore complains of. *See, e.g., Lawrence v. Chabot*, 182 F. App'x 442, 449 (6th Cir. 2006); *Kaimowitz v. State Bar of Mich.*, No. 24-1157, 2025 U.S. App. LEXIS 29406, at *1–2 (6th Cir. Nov. 7, 2025); *Page v. Apperson Crump, PLC*, No. 26-01037, 2026 WL 884005, at *3 (W.D. Tenn. Mar. 30, 2026) ("Serving as a bar association officer with the Clerk of Court and counsel in this case is plainly not a conflict of interest. Participation in a bar association neither creates a conflict of interest nor requires recusal."); *Marcavage v. Bd. of Trs. of Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 232 F. App'x. 79, 83 (3d Cir. 2007) ("Common membership in a legal organization between a judge and counsel is not, by itself, enough to create a situation in which a judge's impartiality might reasonably be questioned. Any other rule would potentially preclude a substantial number of judges from presiding over cases before a large portion of the bar."); *Bailey v. Broder*, 94-2394, 1997 WL 73717, at *2 (S.D.N.Y. Feb. 20, 1997) (denying motion for recusal based on fact that judge chaired a bar association committee on which plaintiff's counsel served).

Nor are there any other facts that support a reasonable inference of a lack of impartiality. Skidmore contends the Court prejudged his case. But the Court's inquiry, early in the case during a telephonic status conference with the parties, as to whether the Department of Education's delay in responding to Skidmore's FOIA

request could have been due to the change in administration following the election was in no way a ruling on, or even an expression of the Court's feelings about, the merits of Skidmore's FOIA claim. And, as defendant points out, the Court denied its motion for summary judgment on this claim.

Lastly, to the extent Skidmore's upset with certain Court rulings is motivating this motion, that too does not warrant recusal. (ECF No. 56, PageID.736 ("The court made other clearly erroneous findings."); *id.* at PageID.738 ("Judge Michelson then showed prejudgment/advocacy for Defendant and made highly irregular and clearly erroneous rulings that have strongly favored Defendants.").) The law is clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

**II.**

From the outset, the Court has recognized the importance and emotional nature of the case to Skidmore. It has endeavored to deal with its complicated issues as efficiently as possible and has spent substantial time with the parties trying to explore paths to resolution, There is nothing about the Court's professional interactions and relationship with defense counsel that has caused or will cause the Court to be biased against Skidmore or for any reasonable person to so believe.

Thus, for the reasons stated above, Skidmore's motion for recusal (ECF No. 55) is DENIED.

IT IS SO ORDERED.

Dated: October 26, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE